IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| W. WELLS VAN PELT, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: |
| v. ) | 05CV477-K |
| ) | |
| UBS FINANCIAL SERVICES INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTION TO DISCOVERY**

To the extent plaintiff has properly objected to the discovery contemplated in Rule 26 of the Federal Rules of Civil Procedure and the objection is ripe for the Court's adjudication, defendant UBS Financial Services Inc. ("UBS") provides the following in response to plaintiff's objection:

**I. FACTUAL AND PROCEDURAL HISTORY.**

Plaintiff W. Wells Van Pelt, Jr. was employed as a financial advisor by J.C. Bradford and its successor, UBS PaineWebber, Inc., from July 1999 to January 15, 2003. Defendant UBS is the successor to these entities. On July 23, 1999, plaintiff executed and filed a Uniform Application for Securities Industry Registration or Transfer ("Uniform Application") to transfer his securities industry registration to J.C. Bradford. Exhibit A. As part of plaintiff's Uniform Application, plaintiff agreed "to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10 as may be amended from time to time . . .." Exhibit A, p. 4. The National Association of Securities

2396196.01
LIB: Charlotte

Dealers ("NASD") was one of the organizations listed in Item 10.  Exhibit A, p. 1.  Plaintiff also agreed to "release each employer, former employer and each other person from any and all liability, of whatever nature, by reason of furnishing any of the above information, including that information reported on the Uniform Termination Notice for Securities Industry Registration (Form U-5)."  Exhibit A, p. 4.

Following the completion of an internal investigation, plaintiff's at-will employment with UBS was terminated on January 15, 2003, due to concerns about conduct regarding transactions at and near the close of the market in a customer's account.  Exhibit B, p. 3.  As required by Article V, § 3(a) of the NASD Bylaws, UBS filed a Uniform Termination Notice for Securities Industry Registration ("Form U-5") within thirty days.  Exhibit C.  Section 3 of the Form U-5 requires the NASD member firm to provide an explanation for the termination of the financial advisor's registration.  Exhibit C, p. 1.  UBS filed the required Form U-5, stating in § 3 that plaintiff's registration was terminated due to "Concerns about conduct regarding transactions at and near the close in a customer''s [sic] account."  Exhibit C, p. 1.  Section 7B of the Form U-5 asks the following: "Currently is, or at termination was, the individual under internal review for fraud or wrongful taking of property, or violating *investment related* statutes, regulations, rules, or industry standards of conduct?" [emphasis in original]  Exhibit C, p. 2.  UBS indicated "No" in Section 7B because the internal investigation was completed prior to plaintiff's termination.  Exhibit C, p. 2.

On January 28, 2004, plaintiff initiated an arbitration proceeding with the NASD against UBS.  Plaintiff's Statement of Claim alleged wrongful termination, defamation, intentional interference with prospective contractual relations, violation of the North Carolina Wage and Hour Act, violation of The Age Discrimination in Employment Act of 1967, tortious interference

2

with contractual relationships, breach of the duty of good faith and fair dealing, conversion, civil conspiracy, and negligent infliction of emotional distress. Exhibit D.

On April 20, 2004, UBS and its employee named in the proceeding filed Respondents' Answer to the Statement of Claim, With Counterclaims and Motion to Dismiss. Respondents denied plaintiff's allegations and moved to dismiss the Statement of Claim on the following grounds, among others: North Carolina law does not recognize a claim for wrongful termination for an at-will employee; the statement in the Form U-5 was true and, nevertheless, privileged as a matter of law; and plaintiff specifically released any claim against his employer based on language provided in the required Form U-5. Exhibit E. UBS asserted counterclaims for breach of a repayment obligation, breach of a non-solicitation agreement, tortious interference with contract, and violation of North Carolina's Unfair and Deceptive Practices Act. Exhibit E.

The NASD has set forth certain necessary qualifications for arbitrators serving in proceedings involving employment discrimination claims, such as the underlying arbitration, including the requirement that the chairperson of a three-person panel have a law degree and be a member in the state bar of any jurisdiction. Such requirements are set forth in NASD Rule 10211, which provides in pertinent part as follows:

> 10211. Special Arbitrator Qualifications for Employment Discrimination Disputes
> (a) Minimum Qualifications for All Arbitrators
>> Only arbitrators classified as public arbitrators as provided in Rule 10308 shall be selected to consider disputes involving a claim of employment discrimination, including a sexual harassment claim, in violation of a statute.
> (b) Single Arbitrators or Chairs of Three-Person Panels
>> (1) Arbitrators who are selected to serve as single arbitrators or as chairs of three-person panels should have the following additional qualifications:
>>> (A) law degree (Juris Doctor or equivalent);
>>> (B) membership in the Bar of any jurisdiction;
>>> (C) substantial familiarity with employment law; and
>>> (D) ten or more years of legal experience, of which at least five years must be in either:

3

2396196.01
LIB: Charlotte

Case 3:05-cv-00477-RJC-DCK   Document 21   Filed 01/31/06   Page 3 of 13

>                (i) law practice;
>                (ii) law school teaching;
>                (iii) government enforcement of equal employment
>                opportunity statutes;
>                (iv) experience as a judge, arbitrator, or mediator; or
>                (v) experience as an equal employment opportunity officer
>                or in-house counsel of a corporation.

Exhibit F.

The NASD provided the parties with a list of potential arbitrators and Arbitrator Disclosure Reports to assist the parties in the ranking and striking of the potential arbitrators. James Edward Banks, Jr. ("Banks") was identified as a potential arbitrator. Banks indicated on his disclosure report that he was a member of the State Bar of Texas and the John S. Leary, Sr. Bar Association.[1] Exhibit G. Banks failed to disclose, however, that his State Bar of Texas membership had been inactive and he had not been authorized to practice law since 1991. Exhibit H. Banks was subsequently appointed Chairman of the three-person panel.

The NASD provided the parties an amended disclosure report for Banks on July 15, 2004, which indicated that Banks was no longer a member of the John S. Leary, Sr. Bar Association. Exhibit I. Banks did not amend his disclosure with respect to the State Bar of Texas and did not disclose that his membership was inactive. Exhibit I.

The panel denied UBS' motion to dismiss on February 9, 2005, without a reasoned opinion. Exhibit J.

On September 22, 2005, the NASD provided the parties a second amended disclosure report for Banks to supplement his prior disclosures. Exhibit K. The disclosure report indicates that Banks "retired" from Bank of America as of August 1, 2005, at the age of 49, and that his employment ended on August 23, 2005. Exhibit K. No additional information was given with

---

[1] The John S. Leary, Sr. Bar Association is the African-American bar association in Mecklenburg County.

4

respect to Banks' early retirement.  Exhibit K.  Banks did not amend his disclosure with respect to the State Bar of Texas and did not disclose that his membership was inactive.  Exhibit K.

The arbitration hearing was held in Charlotte, North Carolina, from October 3-7, 2005.  At the end of plaintiff's presentation of evidence, respondents moved to dismiss plaintiff's claims.  Plaintiff agreed to dismiss the claims against UBS' employee and to dismiss the claim alleging that UBS had violated The Age Discrimination in Employment Act of 1967.  The panel denied UBS' motion as to the remaining claims.

On November 4, 2005, the NASD provided the parties a copy of the panel's Award.  Exhibit B.  Notwithstanding plaintiff's unequivocal release in the parties' arbitration agreement of any and all claims based on the required Form U-5, the panel specifically found that the explanatory sentence in the Form U-5 was defamatory and awarded plaintiff $2,471,330.00 in compensatory damages.[2]  Exhibit B, p. 3.  The panel also recommended the expungement of the explanatory sentence from the Form U-5.  Exhibit B, p. 3.  In the very next sentence of the Award, however, the panel recommended reinserting the very same sentence in the Form U-5 that it found to be defamatory, only deleting the extra apostrophe and adding the words "following an internal investigation."[3]  Exhibit B, p. 3.  The panel then recommended the addition of the following language in the Form U-5:

---

[2] The defamation finding exceeds the arbitrators' powers as it ignores the clear language of the parties' arbitration agreement.  See U.S. Postal Service v. American Postal Workers Union, AFL-CIO, 204 F.3d 523, 531 (4th Cir. 2000) (award vacated where the arbitrator ignored the clear language of the agreement and was not even "arguably construing or applying the contract").

[3] The reinsertion of the very same sentence that the panel found to be defamatory evidences a manifest disregard of the falsity requirement for defamation claims under North Carolina law.  See DaimlerChrysler Corp. v. H.C. Kirkhart, 561 S.E. 2d 276, 284 (N.C. App. 2002) (defamation claim under North Carolina law requires (1) publication of a false statement; (2) to a third party; and (3) damages).

5

2396196.01
LIB: Charlotte

> Although Mr. Van Pelt offered to resign rather than be terminated, his request was denied. The Securities and Exchange Commission ("SEC") conducted an investigation regarding the transactions. The SEC did not initiate any enforcement action against Mr. Van Pelt following the conclusion of its investigation. In addition, a Panel of arbitrators did not find evidence of misconduct by Mr. Van Pelt during the consideration of his claim against UBS for wrongful termination (NASD arbitration case #04-00619).

Exhibit B, p. 3-4. The panel also ordered UBS to file an amended Form U-5, changing its response to Section 7B to indicate that plaintiff was under internal review at the time of his termination and to provide "complete details regarding the internal review" that led to plaintiff's termination. Exhibit B, p. 4 Finally, the panel awarded plaintiff $16,579 for expert witness expenses. Exhibit B, p. 3. All other requests for relief submitted by plaintiff were denied. Exhibit B, p. 4.

On November 15, 2005, plaintiff filed a Complaint with this Court seeking confirmation of the Award. UBS' registered agent was served with a copy of the Complaint on or about November 18, 2005. Plaintiff subsequently filed a Motion for Confirmation of Arbitration Award on December 6, 2005. UBS filed its Answer and a Motion to Vacate on December 7, 2005. Pursuant to Fed.R.Civ.P. 26(f) and LR 16.1(A), the parties held a discovery conference on December 13, 2005, and subsequently submitted their report to the Court. Plaintiff has objected to all discovery contemplated in Rule 26 of the Federal Rules of Civil Procedure.

While there are sufficient grounds to vacate the arbitration award without any discovery, discovery concerning the adequacy of Banks' disclosures to the parties is required. UBS currently anticipates serving a subpoena to Banks' former employer, Bank of America, requesting all records concerning the termination of Banks' employment. Depending on the content of the materials received from Bank of America, UBS may need to depose a Bank of

6

America employee. Deposing Banks does not seem likely at this time. UBS does not currently anticipate any additional discovery.

## II. DISCOVERY SHOULD BE PERMITTED.

### A. The Federal Rules Of Civil Procedure Provide For Discovery.

The Federal Rules of Civil Procedure apply in proceedings to confirm or vacate an arbitration award to the extent the matters of procedure are not provided for in the Federal Arbitration Act ("FAA"). See Fed.R.Civ.P. 81(a)(3); Deiulemar Compagnia Di Navigazione v. M/V Allegra, 198 F.3d 473, 481 (4th Cir. 1999). The FAA is silent as to the discovery procedures for this proceeding. Thus, discovery in this matter is governed by Rule 26 of the Federal Rules of Civil Procedure.

Rule 26 provides in pertinent part that "[u]nless otherwise limited by order of the court in accordance with these rules, . . . [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." As in most matters, this Court enjoys broad discretion in determining the nature and extent of discovery within Rule 26. See American Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 235-36 (4th Cir. 2004). Although the confirmation and vacatur process is meant to be a streamlined one, prohibiting discovery or an evidentiary hearing which might reveal evidence warranting vacatur of an arbitration award is an abuse of discretion. See University Commons Urbana, Ltd. v. Universal Constructors Inc., 304 F.3d 1331, 1341 (11th Cir. 2002) (remanding case for evidentiary hearing where arbitrator did not disclose possible bias to the parties with enough specificity for them to reasonably to understand that a potential conflict existed and the bias could not be gauged from the record, stating that "the district court should have plunged headlong into evidentiary fact-

finding"); Sanko S.S. Co. Ltd. v. Cook Industries, Inc., 495 F.2d 1260, 1263 (2nd Cir. 1973) (remanding case "so that an evidentiary hearing may be held and the full extent and nature of the relationships at issue may be ascertained"). As discussed below, the discovery sought is relevant to the issues before the Court and may provide an additional basis for the vacatur of the Award. Thus, the Court should permit UBS to proceed with its proposed discovery.

**B.     The Proposed Discovery Is Relevant To The Issues In This Proceeding.**

UBS moved this Court to vacate the Award pursuant to 9 U.S.C. § 10(a)(2), which provides that an arbitration award may be vacated if it is the result of the arbitrator's "evident partiality." In Commonwealth Coatings v. Continental Casualty Co., 393 U.S. 145, 147 (1968), the Supreme Court stated that this section evidences "a desire of Congress to provide not merely for any arbitration but for an impartial one." In applying the evident partiality standard, the Court opined as follows:

> [I]f anything, [courts should be] even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review. We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias.

393 U.S. at 149.

The NASD Code of Arbitration Procedure also requires arbitrators to disclose any circumstances that may create an impression of possible bias. Specifically, Rule 10312(a)(2) requires disclosure of "[a]ny existing or past financial, business, professional, family, social, or other relationships or circumstances that are likely to affect impartiality or might reasonably create an appearance of partiality or bias." Subsection (c) of Rule 10312 provides that the "obligation to disclose interests, relationships, or circumstances that might preclude an arbitrator

8

2396196.01
LIB: Charlotte

from rendering an objective and impartial determination described in paragraph (a) is a continuing duty that requires a person who accepts appointment as an arbitrator to disclose, at any stage of the arbitration, any such interests, relationships, or circumstances that arise, or are recalled or discovered." Thus, to the extent circumstances arise in a NASD arbitration that may create an appearance of partiality or bias, both federal law and the NASD Rules impose an affirmative duty on arbitrators to disclose such circumstances to the parties.

The fact that an arbitrator failed to follow the disclosure requirements of the organization governing the arbitration is "highly significant" in deciding the existence of evident partiality on a motion to vacate. Commonwealth Coatings, 393 U.S. at 149. Thus, if Banks failed to disclose circumstances concerning the termination of his employment with Bank of America that would create an appearance of partiality or bias, then such non-disclosure is "highly significant" to this Court's analysis of UBS' claim of evident partiality. Information dubbed "highly significant" by the Supreme Court clearly satisfies the relevancy requirement of Fed.R.Civ.P. 26.

Banks' second amended disclosure report simply indicated that Banks retired as of August 1, 2005, and that his employment with Bank of America ended on August 23, 2005. Banks' disclosure does not state whether the termination of his employment was totally voluntary or whether he offered to "retire" at age 49 to avoid involuntary termination. Considering the nature of the employment claims in the underlying arbitration, if Banks' retirement was involuntary in any respect, then Banks was required to disclose such circumstances.

Further, while arbitrators are not required to state their reasoning in arbitration awards, the panel in the underlying proceeding provided insight into its reasoning. It is evident from the defamation finding in the Award that the panel placed great weight on the alleged manner in

9

which plaintiff's termination was handled. Paragraph 3 of the Award requires that the replacement language for the termination comment include the following sentence: "Although Mr. Van Pelt offered to resign rather than be terminated, his request was denied."[4] Such criticism of UBS alone evidences partiality sufficient to vacate the Award if Banks was given the opportunity to retire from Bank of America to avoid involuntary termination less than two months prior to the arbitration hearing.

As in <u>University Commons Urbana, Ltd.</u>, <u>supra</u>, Banks' bias cannot be gauged from the record alone. While the Award provides insight into the arbitrators' reasoning and a basis for the discovery sought, discovery is required to determine the circumstances surrounding the termination of Banks' employment. The information sought is "highly significant" to the issues raised in UBS' Motion to Vacate. Thus, limited discovery should be permitted.

**C.     The Proven Inadequacies Of Banks' Disclosures Warrant Further Inquiry Into His Employment Disclosures.**

Banks' disclosures have already proven inadequate. Banks stated that he was a member of the State Bar of Texas. Banks failed to disclose, however, that his bar membership had been inactive and he had not been authorized to practice law since 1991. NASD Rule 10211 provides that the chairperson of a three-person panel hearing employment discrimination claims must be a member of a state bar and have significant legal experience. This rule was adopted due to the complex legal issues surrounding employment claims to provide the parties with at least one attorney on the panel with employment expertise. UBS was denied such a right due to Banks' inadequate disclosures. Banks' failure to disclose his status with the State Bar of Texas is direct

---

[4] It is unclear whether any such evidence of this allegation was even offered at the hearing.

10

2396196.01
LIB: Charlotte
Case 3:05-cv-00477-RJC-DCK     Document 21     Filed 01/31/06     Page 10 of 13

evidence of arbitrator impropriety that warrants further discovery into the adequacy of his employment disclosures and vacatur of the Award.

### D. The Discovery Will Be Narrowly Tailored And Can Be Conducted With Judicial Supervision.

UBS intends to serve discovery narrowly tailored to the issues relevant to its motion. UBS currently anticipates serving a subpoena on Bank of America, requesting all records concerning the termination of Banks' employment, including all records evidencing the voluntary or involuntary nature of the termination. UBS may need to depose a Bank of America employee if the records fail to reveal the circumstances surrounding the termination of his employment. While unlikely, it may become necessary depose Banks orally or upon written questions. If such a need arises, UBS does not intend to ask Banks questions concerning his reasoning for the Award.

In closing, UBS recognizes the confidential nature of the information it seeks and will work with the Court and plaintiff to assure that the information remains confidential.

2396196.01
LIB: Charlotte

**WHEREFORE,** UBS respectfully requests that the Court deny plaintiff's objection to the discovery contemplated in Rule 26 of the Federal Rules of Civil Procedure.

        s/ William O. L. Hutchinson
        George C. Covington
        William O. L. Hutchinson
        Erika A. Olson
        KENNEDY COVINGTON LOBDELL &
        HICKMAN, LLP
        Hearst Tower, 47th Floor
        214 N. Tryon Street
        Charlotte, North Carolina 28202
        Telephone: (704) 331-7400
        Facsimile: (704) 353-3132
        E-mail: whutchinson@kennedycovington.com
        Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

andywhiteman@hwlawyers.com

and I certify that I have mailed the document to the following non CM/ECF participants:

Sarah G. Anderson
Clawson & Staubes, LLC
126 Seven Farms Dr, Ste 200
Charleston, SC 29492-7595

Charles P. Murdter
1050 Connecticut Ave Ste 1000
Washington, DC 20036

s/ William O. L. Hutchinson

William O. L. Hutchinson
KENNEDY COVINGTON LOBDELL &
HICKMAN, LLP
Hearst Tower, 47th Floor
214 N. Tryon Street
Charlotte, North Carolina 28202
Telephone: (704) 331-7400
Facsimile: (704) 353-3132
E-mail: whutchinson@kennedycovington.com