**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| **W. WELLS VAN PELT, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:** |
| **v.** | ) | **05CV477-K** |
| | ) | |
| **UBS FINANCIAL SERVICES INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**EXHIBIT INDEX FOR DEFENDANT'S RESPONSE**
**TO PLAINTIFF'S OBJECTION TO DISCOVERY**

Exhibit A Uniform Application for Securities Industry Registration or Transfer

Exhibit B Award

Exhibit C Form U-5 Uniform Termination Notice for Securities Industry Registration

Exhibit D Statement of Claim

Exhibit E Respondents' Answer to the Statement of Claim, With Counterclaims and Motion to Dismiss

Exhibit F NASD Rule 10211

Exhibit G Arbitrator Disclosure Report

Exhibit H Letter from Clerk of the Supreme Court of Texas

Exhibit I First Amended Arbitrator Disclosure Report

Exhibit J Order Regarding Motion to Dismiss

Exhibit K Second Amended Arbitrator Disclosure Report

## UNIFORM APPLICATION FOR SECURITIES INDUSTRY REGISTRATION OR TRANSFER

*If there is an amendment to this page, complete only Items 1, 2, 3, 4 and Items being amended.*

| LAST NAME | JR./SR. etc. | FIRST NAME | MIDDLE NAME (SPECIFY IF NONE) | ② APPLICANT'S CRD # |
|---|---|---|---|---|
| Van Pelt | Jr. | William | Wells | SOC. SEC. # 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 |

FIRM ID # 01287 — ④ FIRM NAME (Do not include this employment under item 19, page 2): JC Bradford + Co.

APPLICANT'S NFA #

⑤ EMPLOYMENT DATE 7-23-99

FIRM MAIN ADDRESS: 330 Commerce St. (STREET) Nashville (CITY) TN (STATE) 37201 (ZIP)

BRANCH I.D. # 116 — OFFICE OF EMPLOYMENT ADDRESS: 6337 Morrison Blvd. (STREET) Charlotte (CITY) NC (STATE) 28211 (ZIP)

Will applicant maintain registration with another Broker-Dealer not under common ownership or control with the firm named in Item 4 above? ☐ Yes ☒ No
If "Yes", list in Item 19)
If "Yes", has/have the firm(s) been contacted? ☐ Yes ☐ No

Will applicant maintain multiple registrations with Broker-Dealers under common ownership or control with the firm named in Item 4 above? ☐ Yes ☒ No
If "Yes", fill in information below:

Firm CRD # ______ Name of Firm ______
Firm CRD # ______ Name of Firm ______
Firm CRD # ______ Name of Firm ______

TO BE REGISTERED WITH THE FOLLOWING:

☐ ASE ☐ BSE ☒ CBOE ☐ CSE ☐ MSE ☒ NASD ☐ NFA ☒ NYSE ☐ PHLX ☐ PSE ☐ OTHER (Specify)

☐ AK ☐ AL ☐ AR ☐ AZ ☐ CA ☐ CO ☐ CT ☐ DC ☐ DE ☐ FL ☐ GA ☐ HI ☐ IA
☐ ID ☐ IL ☐ IN ☐ KS ☐ KY ☐ LA ☐ MA ☐ MD ☐ ME ☐ MI ☐ MN ☐ MO ☐ MS
☐ MT ☐ NC ☐ ND ☐ NE ☐ NH ☐ NJ ☐ NM ☐ NV ☐ NY ☐ OH ☐ OK ☐ OR ☐ PA
☐ RI ☐ SC ☐ SD ☐ TN ☐ TX ☐ UT ☐ VA ☐ VT ☐ WA ☐ WI ☐ WV ☐ WY ☐ PR

☐ *All Jurisdictions. (Check In Lieu Of Each Individual Box).*

TYPE OF EXAMINATION/REGISTRATION REQUESTED (check all applicable categories)

- ☐ S-3 Commodity Futures Examination
- ☐ S-4 (OP) Registered Options Principal
- ☐ S-5 Interest Rate Options Examination
- ☐ S-6 (IR) Investment Company and Variable Contracts Products Representative
- ☐ S-7 (GS) Full Registration/General Securities Representative
- ☐ S-7 (TR) Securities Trader (NYSE)
- ☐ S-7 (TS) Trading Supervisor (NYSE)
- ☐ S-8 (SU) General Securities Sales Supervisor
- ☐ S-8 (BM) Branch Office Manager (NYSE)
- ☐ S-11 (AR) Assistant Representative/Order Processing
- ☐ S-15 (FC) Foreign Currency Options
- ☐ S-16 (SA) Supervisory Analyst
- ☐ S-22 (DR) Direct Participation Program Representative
- ☐ S-24 (GP) General Securities Principal
- ☐ S-26 (IP) Investment Company and Variable Contracts Products Principal
- ☐ S-27 (FN) Financial and Operations Principal
- ☐ S-28 (FI) Introducing Broker-Dealer/Financial and Operations Principal
- ☐ S-39 (DP) Direct Participation Program Principal
- ☐ S-42 (OR) Options Representative
- ☐ S-52 (MR) Municipal Securities Representative
- ☐ S-53 (MP) Municipal Securities Principal
- ☐ S-62 (CS) Corporate Securities Representative
- ☐ S-63 Uniform Securities Agent State Law Examination
- ☐ S-65 Uniform Investment Advisor Law Examination
- ☐ (AG) Agent
- ☐ (RG) Government Securities Representative
- ☐ (PG) Government Securities Principal
- ☐ (ME) Member Exchange (NYSE)
- ☐ (LE) Securities Lending Representative (NYSE)
- ☐ (LS) Securities Lending Supervisor (NYSE)
- ☐ (AM) Allied Member (NYSE)
- ☐ (AP) Approved Person (NYSE)
- ☐ (AI) Agent of the Issuer
- ☐ Reschedule Exam Series ______
- ☐ Other ______

**THIS PORTION MUST BE COMPLETED FOR ALL PARTIAL (TRANSFER OR RE-REGISTRATION) FILINGS**

APPLICANT'S CURRENT ADDRESS: ______ STREET CITY STATE ZIP — FROM MONTH YEAR

FIRM(S) APPLICANT IS TRANFERRING FROM: ______ TERMINATION DATE: (Mo/Day/Yr.) ______

☐ ◀ *CHECK IF THIS U-4 IS BEING FILED TO MAKE PERMANENT A TEMPORARY REGISTRATION (TAT).*

Appropriate signatory area *DOES NOT* have to be completed *UNLESS* this page being submitted as an amendment.

MONTH DAY YEAR ______ SIGNATURE OF APPROPRIATE SIGNATORY

______ TYPE OR PRINT NAME OF APPROPRIATE SIGNATORY

CRD US

EXHIBIT A

UBS 00229

U-4 (11/97)

FORM U-4

UNIFORM APPLICATION FOR SECURITIES INDUSTRY REGISTRATION OR TRANSFER

*If there is an amendment to this page, complete only Items 13, 14 and the Items being amended.*

| (13) FIRM CRD # 01287 | SOCIAL SECURITY # 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 | APPLICANT'S CRD # |
|---|---|---|
| FIRM NFA # | | APPLICANT'S NFA # |

**PERSONAL DATA**

| (14) LAST NAME | JR./SR., etc. | FIRST NAME | MIDDLE NAME | (15) OTHER NAMES KNOWN BY |
|---|---|---|---|---|
| Van Pelt | Jr. | William | Wells | |

| (16) DATE OF BIRTH (Month, Day, Year) | (17) SEX | HEIGHT | WEIGHT | HAIR COLOR | EYE COLOR |
|---|---|---|---|---|---|
| 7-15-47 | M | 5'8" | 200 | Br | Br |

**RESIDENTIAL HISTORY**

(18) GIVE ALL ADDRESSES FOR THE PAST FIVE YEARS, STARTING WITH CURRENT ADDRESS.

| STREET | CITY | STATE | ZIP | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR |
|---|---|---|---|---|---|---|---|
| 2207 Sharon Rd. | Charlotte | NC | 28207 | 07 | 59 | PRESENT | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**EMPLOYMENT AND PERSONAL HISTORY**

(19) **ACCOUNT FOR ALL TIME FOR THE PAST TEN YEARS.** Give all employment experience starting with your previous employer and working back ten years. Include full and part-time work, self-employment, military service, unemployment and full-time education. (If this page is being filed as part of a Form BD, start with your present employer instead.)

| | | FROM MONTH | FROM YEAR | TO MONTH | TO YEAR | POSITION HELD |
|---|---|---|---|---|---|---|
| NAME PaineWebber | | 3 | 98 | 7 | 99 | Broker |
| CITY Charlotte | STATE NC | | | | | |
| NAME PaineWebber | | 7 | 95 | 1 | 98 | Branch Manager |
| CITY Winston-Salem | STATE NC | | | | | |
| NAME Smith Barney | | | 78 | 7 | 95 | Broker |
| CITY Charlotte | STATE NC | | | | | |
| NAME | | | | | | |
| CITY | STATE | | | | | |
| NAME | | | | | | |
| CITY | STATE | | | | | |
| NAME | | | | | | |
| CITY | STATE | | | | | |
| NAME | | | | | | |
| CITY | STATE | | | | | |
| NAME | | | | | | |
| CITY | STATE | | | | | |
| NAME | | | | | | |
| CITY | STATE | | | | | |
| NAME | | | | | | |
| CITY | STATE | | | | | |
| NAME | | | | | | |
| CITY | STATE | | | | | |
| NAME | | | | | | |
| CITY | STATE | | | | | |

(20) Are you currently engaged in any other business (not shown above) either as a proprietor, partner, officer, director, trustee, employee, agent or otherwise?

☐ YES ☒ NO If "YES", please explain below:

The appropriate signatory area *DOES NOT* have to be completed *UNLESS* this page is being submitted as an amendment.

MONTH DAY YEAR SIGNATURE OF APPROPRIATE SIGNATORY

TYPE OR PRINT NAME OF APPROPRIATE SIGNATORY

CRD USE ONLY

UBS 00230

U-4 UNIFORM APPLICATION FOR SECURITIES INDUSTRY REGISTRATION OR TRANSFER

*If there is an amendment to this page, complete only item 21 and items being amended*

| CRD # | FIRM NFA # | SOCIAL SECURITY # | APPLICANT'S CRD # | APPLICANT'S NFA # |
|---|---|---|---|---|
| )1287 | | 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 | | |

NSWER TO ANY OF THE FOLLOWING QUESTIONS IS "YES" AND YOU CANNOT UTILIZE THE CERTIFICATION IN ITEM 22O BELOW, ATTACH COMPLETE DETAILS OF ALL EVENTS OR PROCEEDINGS ON DRP(S)

**REFER TO THE EXPLANATION OF TERMS SECTION OF FORM U-4 INSTRUCTIONS FOR EXPLANATIONS OF ITALICIZED TERMS.**

| Question | YES | NO | # |
|---|---|---|---|
| e you, or based upon activities that occurred while you exercised *control* it, has an organization ever been convicted of or plead guilty or nolo endere ("no contest") in a domestic, foreign or military court to: | | | |
| a *felony* or *misdemeanor* involving: investments or an *investment-related* business, or any fraud, false statements or omissions, wrongful taking of property, or bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? | ☐ | ☒ | 1 |
| *This question intentionally left blank.* | | | |
| any other *felony*? | ☐ | ☒ | 3 |
| you, or based upon activities that occurred while you exercised *control* it, has an organization ever been *charged* with any *felony* or charged with a *emeanor* specified in question A in a domestic, foreign or military court? | ☐ | ☒ | 4 |
| any domestic or foreign court ever: | | | |
| *enjoined* you in connection with any *investment-related* activity? | ☐ | ☒ | 5 |
| a) *found* that you were *involved* in a violation of any *investment-related* statute(s) or regulation(s) -OR- b) dismissed, pursuant to a settlement agreement, an *investment-related* civil action brought against you by a state or *foreign financial regulatory authority*? | ☐ | ☒ | 6 |
| he U.S. Securities and Exchange Commission or the Commodity Futures ng Commission ever: | | | |
| *found* you to have made a false statement or omission? | ☐ | ☒ | 7 |
| *found* you to have been *involved* in a violation of its regulations or statutes? | ☐ | ☒ | 8 |
| *found* you to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ☐ | ☒ | 9 |
| entered an *order* against you in connection with *investment-related* activity? | ☐ | ☒ | 10 |
| imposed a civil money penalty on you, or *ordered* you to cease and desist from any activity? | ☐ | ☒ | 10A |
| any other Federal regulatory agency or any state regulatory agency or *foreign financial regulatory authority* ever (Note: This introduction to the question s to Items 22E (1-5) only): | | | |
| *found* you to have made a false statement or omission or been dishonest, unfair or unethical? | ☐ | ☒ | 11 |
| *found* you to have been *involved* in a violation of *investment-related* regulation(s) or statute(s)? | ☐ | ☒ | 12 |
| *found* you to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ☐ | ☒ | 13 |
| entered an *order* against you in connection with *investment-related* activity? | ☐ | ☒ | 14 |
| denied, suspended, or revoked your registration or license or otherwise, by *order*, prevented you from associating with an *investment-related* business restricted your activities? | ☐ | ☒ | 15 |
| is your authorization to act as an attorney, accountant or federal contractor ever been revoked or suspended? | ☐ | ☒ | 16 |
| any *self-regulatory organization* or commodities exchange ever: | | | |
| *found* you to have made a false statement or omission? | ☐ | ☒ | 17 |
| *found* you to have been *involved* in a violation of its rules (other than a violation designated as a *"minor rule violation"* under a plan approved by the U.S. Securities and Exchange Commission)? | ☐ | ☒ | 18 |
| *found* you to have been the cause of an *investment-related* business having authorization to do business denied, suspended, revoked or restricted? | ☐ | ☒ | 19 |
| (4) disciplined you by expelling or suspending you from membership, barring or suspending your association with its members, or restricting your activities? | ☐ | ☒ | 20 |
| 22G Within the past twenty-four (24) months, have you been the subject of an *investment-related*, consumer-initiated, written complaint, not otherwise reported under questions 22H(1) or 22H(2) which: (1) alleged that you were *involved* in one or more *sales practice violations* and contained a claim for compensatory damages of $5,000 or more [Note: If no damage amount is alleged, the complaint must be reported unless the firm has made a good faith determination that the damages from the alleged conduct would be less than $5,000.] -OR- (2) alleged that you were *involved* in forgery, theft, misappropriation or conversion of funds or securities? | ☐ | ☒ | 21 |
| 22H (1) Have you ever been named as a respondent/defendant in an *investment-related*, consumer-initiated arbitration or civil litigation which alleged that you were *involved* in one or more *sales practice violations* and which: (a) is still pending, -OR- (b) resulted in an arbitration award or civil judgment against you, regardless of amount, -OR- (c) was settled for an amount of $10,000 or more? | ☐ | ☒ | 22 |
| (2) Have you ever been the subject of an *investment-related*, consumer-initiated written complaint, not otherwise reported under question 22H(1) above, which alleged that you were *involved* in one or more sales practice violations, and which complaint was settled for an amount of $10,000 or more? | ☐ | ☒ | 23 |
| 22I (1) Have you been notified, in writing, that you are now the subject of any investigation, regulatory complaint or proceeding that could result in a "yes" answer to any part of 22A, B, D, E, or F -OR- (2) have you been named in any pending *investment-related* civil action that could result in a "yes" answer to any part of 22C? | ☐ | ☒ | 24 |
| 22J Has a bonding company ever denied, paid out on, or revoked a bond for you? | ☐ | ☒ | 25 |
| 22K Do you have any unsatisfied judgments or liens against you? | ☐ | ☒ | 26 |
| 22L Within the past 10 years have you, or based upon events that occurred while you exercised *control* over it, has an organization made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition? | ☐ | ☒ | 27 |
| 22M Within the past 10 years, based upon events that occurred while you exercised *control* over it, has a broker or dealer been the subject of an involuntary bankruptcy petition, or had a trustee appointed, or had a direct payment procedure initiated under the Securities Investor Protection Act? | ☐ | ☒ | 28 |
| 22N Have you ever voluntarily *resigned*, been discharged or permitted to *resign* after allegations were made that accused you of: (1) violating *investment-related* statutes, regulations, rules or industry standards of conduct? | ☐ | ☒ | 29 |
| (2) fraud or the wrongful taking of property? | ☐ | ☒ | 30 |
| (3) failure to supervise in connection with *investment-related* statutes, regulations, rules or industry standards of conduct? | ☐ | ☒ | 31 |

**DISCLOSURE CERTIFICATION (OPTIONAL)**

y to the accuracy and completeness of the disclosure information in your file if it has been fully provided in DRP format. If DRP(s) are not on file, do not answer these certification boxes. Provide full details of all matters on DRP(s). questions in Item 22 must be answered, regardless of whether the certification is being utilized. Refer to the Form U-4 Instructions for additional information on the utilization of the certification language.

eceived a copy of my disclosure file taken from the CRD system. I acknowledge that all ion contained therein is fully disclosed, accurate and in DRP format. I further certify the :

(1) I have no new information to add to my disclosure file. ☐ 32

(2) I have new information to add to my disclosure file which is reported on the attached DRP(s). ☐ 33

(3) I have updated information, reported on the attached DRP(s) which was previously reported. ☐ 34

ant and appropriate signatory area *DOES NOT* have to be completed *UNLESS* is being submitted as an amendment.

DAY YEAR SIGNATURE OF APPLICANT
NT PLICANT: ______

DAY YEAR SIGNATURE OF APPROPRIATE SIGNATORY
NAME OF E SIGNATORY: ______

CRD USE ONLY ______

UBS 00231

UNIFORM APPLICATION FOR SECURITIES INDUSTRY REGISTRATION OR TRANSFER

*If there is an amendment to this page, complete only Item 23 and Items being amended.*

| FIRM CRD # 01387 | SOCIAL SECURITY # 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 | APPLICANT'S CRD # |
|---|---|---|
| FIRM NFA # | | APPLICANT'S NFA# |

**THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY**

1. I swear or affirm that I have read and understand the items and instructions on this form and that my answers (including attachments) are true and complete to the best of my knowledge. I understand that I am subject to administrative, civil or criminal penalties if I give false or misleading answers.
2. I apply for registration with the jurisdictions and organizations indicated in Item 10 as may be amended from time to time and, in consideration of the jurisdictions and organizations receiving and considering my application, I submit to the authority of the jurisdictions and organizations and agree to comply with all provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the jurisdictions and organizations as they are or may be adopted, or amended from time to time. I further agree to be subject to and comply with all requirements, rulings, orders, directives and decisions of, and penalties, prohibitions and limitations imposed by the jurisdictions and organizations, subject to right of appeal or review as provided by law.
3. I agree that neither the jurisdictions or organizations nor any person acting on their behalf shall be liable to me for action taken or omitted to be taken in official capacity or in the scope of employment, except as otherwise provided in the statutes, constitutions, certificates of incorporation, by-laws or the rules and regulations of the jurisdictions and organizations.
4. I authorize the jurisdictions and organizations to give any information they may have concerning me to any employer or prospective employer, any federal, state or municipal agency, or any other organization and I release the jurisdictions and organizations and any person acting on their behalf from any and all liability of whatever nature by reason of furnishing such information.
5. I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgement in any court of competent jurisdiction.
6. For the purpose of complying with the laws relating to the offer or sale of securities or commodities in the jurisdictions indicated in Item 10 as may be amended from time to time, I irrevocably appoint the administrator of each of those jurisdictions, or such other person designated by law, and the successors in such office, my attorney upon whom may be served any notice, process or pleading in any action or proceeding against me arising out of or in connection with the offer or sale of securities or commodities, or out of the violation or alleged violation of the laws of the jurisdictions. I consent that any such action or proceeding against me may be commenced in any court of competent jurisdiction and proper venue by service of process upon the appointee as if I were a resident of, and had been lawfully served with process in, the jurisdiction. I request that a copy of any notice, process or pleading served hereunder be mailed to my current residential address as reflected in this form or any amendment thereto.
7. I consent that notice of any investigation or proceeding by any self-regulatory organization against applicant may be given by personal service or by regular, registered or certified mail or confirmed telegram to applicant at his/her most recent business or home address as reflected in this Form U-4, or any amendment thereto, or by leaving notice of the investigation or proceeding at such address.
8. I authorize all of my employers and any other person to furnish to any jurisdiction or organization or any agent acting on its behalf, any information they have, including my creditworthiness, character, ability, business activities, educational background, general reputation, history of my employment and, in the case of former employers, complete reasons for my termination. Moreover, I release each employer, former employer and each other person from any and all liability, of whatever nature, by reason of furnishing any of the above information, including that information reported on the Uniform Termination Notice for Securities Industry Registration (Form U-5). I recognize that I may be the subject of an investigative consumer report ordered by the jurisdictions, or organizations with which this application is being filed, and waive any requirement of notification with respect to any investigative consumer report ordered by any such jurisdiction or organization. I understand that I have the right to request complete and accurate disclosure by the jurisdiction or organization of the nature and scope of the requested investigative consumer report.
9. I understand and certify that the representations in this form apply to all employers with whom I seek registration as indicated in Items 4 and 9 of this form. I agree to update this form by causing an amendment to be filed on a timely basis whenever changes occur to answers previously reported. Further, I represent that, to the extent any information previously submitted is not amended, the information provided in this form is currently accurate and complete.
10. If I have become temporarily registered as an agent, I acknowledge that this application for registration with the jurisdictions and organizations indicated in Item 10 is separate and distinct from any temporary registration already obtained with the jurisdictions and organizations. I further understand that my registration may be denied, suspended or revoked under the laws, regulations or rules of the jurisdictions and organizations.

7 23 99
Month Day Year

[signature]
SIGNATURE OF APPLICANT

William Wells Van Pelt, Jr.
TYPE OR PRINT NAME OF APPLICANT

**THE FIRM MUST COMPLETE THE FOLLOWING**

...the best of my knowledge and belief, the applicant is currently bonded where required, and, at the time of approval, will be familiar with the statute(s), constitu...n(s), rules and by-laws of the agency, jurisdiction or self-regulatory organization with which this application is being filed, and the rules governing registered ...sons, and will be fully qualified for the position for which application is being made herein. I agree that, notwithstanding the approval of such agency, jurisdiction ...organization which hereby is requested, I will not employ the applicant in the capacity stated herein without first receiving the approval of any authority which ...y be required by law. This firm has communicated with all of the applicant's previous employers for the past three years.

| EMPLOYER | NAME OF PERSON CONTACTED | POSITION OF PERSON CONTACTED | EMPLOYED FROM | TO | HOW CONTACTED PHONE | LETTER | INTERVIEW |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

...ADDITION, I HAVE TAKEN APPROPRIATE STEPS TO VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED IN AND ...TH THIS APPLICATION.

...E APPROPRIATE SIGNATORY AREA *MUST BE* COMPLETED ON ALL INITIAL, ...ANSFER OR AMENDMENT FILINGS.

...NTH DAY YEAR SIGNATURE OF APPROPRIATE SIGNATORY

TYPE OR PRINT NAME OF APPROPRIATE SIGNATORY

CRD USE ONLY

UBS 00232

# Award
## NASD Dispute Resolution

In the Matter of the Arbitration Between:

Name of the Claimant

W. Wells Van Pelt, Jr.

Case Number: 04-00619

Name of the Respondents

UBS Financial Services, Inc.
Michael Richard Williams

Hearing Site: Charlotte, North Carolina

Nature of the Dispute: Associated Person vs. Member and Associated Person.

REPRESENTATION OF PARTIES

Claimant, W. Wells Van Pelt, Jr., hereinafter referred to as "Claimant", was represented by Sarah G. Anderson, Esq., Clauson & Staubes, LLC, Charleston, South Carolina.

Respondents, UBS Financial Services, Inc. ("UBS) and Michael Williams ("Williams"), hereinafter collectively referred to as "Respondents", were represented by William L. Sitton, Jr., Esq., KMZ Rosenman, Charlotte, North Carolina.

CASE INFORMATION

Statement of Claim filed on January 28, 2004.
Claimant signed the Uniform Submission Agreement on January 21, 2004.
Statement of Answer, Counterclaim, and Motion to Dismiss filed by Respondents on April 20, 2004.
Respondent Williams signed the Uniform Submission Agreement on March 26, 2004.
A representative of Respondent UBS executed the Uniform Submission Agreement on April 19, 2004.
Claimant's Answer to the Counterclaim was filed on May 27, 2005.
Claimant's Memorandum in Opposition to Respondents' Motion to Dismiss was filed on June 4, 2004.
Respondents' Reply Brief in Support of the Motion to Dismiss was filed on July 20, 2004.
Claimant's Response to Reply Brief Concerning the Motion to Dismiss was filed on August 4, 2004.

CASE SUMMARY

Claimant asserted the following causes of action, among others: wrongful termination; defamation; intentional interference with prospective contractual relations; breach of N.C. Wages and Hours Act; violation of Age Discrimination in Employment Act of 1967 (against Respondent UBS only); tortious interference with contractual relationships; breach of duty of good faith and

EXHIBIT B

PAGE 6/18 * RCVD AT 11/4/2005 4:32:41 PM [Eastern Standard Time] * SVR:NYC-US-FAX-01/10 * DNIS:5655 * CSID:202 728 8082 * DU

fair dealing; conversion; civil conspiracy; and negligent infliction of emotional distress. The causes of action relate to Claimant's termination by Respondent UBS.

Unless specifically admitted in their Answer, Respondents denied the allegations made in the Statement of Claim and asserted the following defenses, among others: no claim for wrongful termination of an at-will employee is permitted under North Carolina law; the information set forth in Claimant's Form U-5 is true because Claimant breached UBS's policy and NYSE rules, and Claimant released Respondent UBS from liability for information reported in his Form U-5 in the Form U-4 he signed with his new employer; no claim for intentional interference with prospective contractual relations is permitted under North Carolina law; Claimant received all of the compensation to which he was entitled and he owes Respondent UBS money pursuant to the terms of an Employee Forgivable Loan ("EFL"); Claimant's age discrimination claim fails to state an allegation of or provide evidence of age bias; the customers in question had a contractual relationship with Respondent UBS, not with Claimant; no claim is permitted under North Carolina law for civil conspiracy; and, the Statement of Claim does not allege severe and disabling emotional condition that was diagnosed and treated by a medical professional as required under North Carolina law.

Respondent UBS asserted the following causes of action in its Counterclaim, among others: breach of repayment provision of EFL; breach of non-solicitation provision of EFL; tortious interference with contract; and violation of North Carolina's Unfair and Deceptive Practices Act. The causes of action relate to Claimant's employment with and termination from Respondent UBS.

Unless specifically admitted in his Answer, Claimant denied the allegations made in the Counterclaim and asserted the following defenses, among others: Claimant's obligations under the EFL were discharged as a result of Respondent UBS's wrongful termination of Claimant; the non-solicitation provision of the EFL is void and unenforceable because of Respondent UBS's wrongful termination of Claimant; the customers in questions belonged to Claimant, not Respondent UBS; and North Carolina's Unfair and Deceptive Practices Act in general does not apply to employer-employee relationships.

## RELIEF REQUESTED

Claimant requested damages of $12,316,770 based upon the following components: (1) loss of income in the amount of $3,916,497; (2) premature withdrawals from retirement plans in the amount of $160,700; (3) legal fees and expenses in the amount of $146,364; (4) expert witness fees in the amount of $16,579.00 (5) net commissions as of January 2003 in the amount of $16,000 which were earned but not paid; (6) bonus in the amount of $6,796 which was earned in 2002 but not paid; (7) voluntary contributions to deferred compensation in PartnerPlus retained by UBS and not applied against the EFL in the amount of $3,834; (8) vesting in PartnerPlus, 401(k) and stock options in the amount of $50,000; (9) pain and suffering damages in the amount of $3,000,000; and (10) punitive damages in the amount of $5,000,000.

Claimant also requested the following; (1) amendment of Claimant's Form U-5 to remove the reference to termination for cause; (2) copies of all of Claimant's customer records; (3) and reimbursement of the costs and expenses of the arbitration.

Following the hearing, Respondent UBS requested repayment of the outstanding balance in the EFL in the amount of $12,132.56, plus reimbursement of all attorneys' fees and costs. Respondent did not request damages for tortious interference or for treble damages, which were requested in its Counterclaim.

OTHER ISSUES CONSIDERED AND DECIDED

The Panel denied Respondents' Motion to Dismiss by Order dated February 9, 2005.

At the hearing, Respondents submitted separately a Motion to Dismiss the claims against Respondent UBS and a Motion to Dismiss the claims against Respondent Williams. The Panel denied the Motion to Dismiss the claims against Respondent UBS. Claimant agreed to dismiss the claims against Respondent Williams and to dismiss the cause of action alleging that Respondent UBS violated the Age Discrimination in Employment Act of 1967.

Following the hearing, the Panel allowed the parties to submit post-hearing amended damage calculations.

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

AWARD

After considering the pleadings, the testimony and evidence presented at the hearing, and the post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Respondent UBS is liable and shall pay to Claimant compensatory damages in the amount of $2,471,330.00;

2. Respondent UBS is liable and shall pay to Claimant the sum of $16,579 for the expenses Claimant incurred for his expert witnesses;

3. The Panel finds that the Form U-5 filed with CRD by Respondent UBS PaineWebber Inc. (CRD 8174) on behalf of Claimant W. Wells Van Pelt contains defamatory information. The Panel therefore recommends the expungement of the Termination Comment as reported in Item 3 on the Form U5 filed with CRD by Respondent UBS, which states "Concerns about conduct regarding transactions at and near the close in a customers"s (sic) account." The replacement language for the termination comment is "Concerns about conduct regarding transactions at and near the close in a customer's account following an internal investigation. Although Mr. Van Pelt offered to resign rather than

be terminated, his request was denied. The Securities and Exchange Commission ("SEC") conducted an investigation regarding the transactions. The SEC did not initiate any enforcement action against Mr. Van Pelt following the conclusion of its investigation. In addition, a Panel of arbitrators did not find evidence of misconduct by Mr. Van Pelt during the consideration of his claim against UBS for wrongful termination (NASD arbitration case #04-00619)." There is no change recommended to the original reason for termination (i.e., discharge). The expungement recommendation is based on the defamatory nature of the information contained in Claimant's CRD record;

4. The Panel orders that Respondent UBS file an amended Form U5 with CRD on behalf of Claimant. Question 7B (Internal Review) should be answered "Yes" and complete details regarding the internal review should be provided on a U5 Internal Review Disclosure Reporting Page (DRP). The amended Form U5 should be filed with CRD within 30 days after this Award is served to all parties;

5. All other requests for relief submitted by Claimant are hereby denied;

6. Respondent UBS's Counterclaim is denied in its entirety;

7. All claims against Respondent Williams are dismissed in their entirety;

8. The parties shall bear their respective costs, including attorneys' fees, except as Fees are specifically addressed below; and

9. Any and all relief not specifically addressed herein, including punitive damages, is denied in its entirety.

## FEES

Pursuant to the Code, the following fees are assessed:

Filing Fees

NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:

| | |
|---|---|
| Initial claim filing fee | = $ 600.00 |
| Counterclaim | = $ 1,000.00 |

Member Fees

Member fees are assessed to each member firm that is a party in these proceedings or to the member firms that employed the associated person(s) at the time of the events giving rise to the dispute. Accordingly, Respondent UBS is a party.

| | |
|---|---|
| Member surcharge | = $ 3,750.00 |
| Pre-hearing process fee | = $ 750.00 |
| Hearing process fee | = $ 5,500.00 |
| Total Member Fees | = $10,000.00 |

Adjournment Fees

Adjournments granted during these proceedings for which fees were assessed:

February 22-25, 2005, adjournment by Claimant — fee waived by Panel.

Three-Day Cancellation Fees

Fees apply when a hearing on the merits is postponed or settled within three business days before the start of a scheduled hearing session:

February 22-25, 2005, adjournment by Claimant — fee waived by Panel

Forum Fees and Assessments

The Panel has assessed forum fees for each session conducted. A session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with the arbitrator(s), that lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| One (1) Pre-hearing session with a single arbitrator @ $450.00 | | | = $ 450.00 |
| Pre-hearing conference: | November 5, 2004 | 1 session | |
| One (1) Pre-hearing session with Panel @ $1,200.00 | | | = $ 1,200.00 |
| Pre-hearing conference: | September 9, 2004 | 1 session | |
| Twelve (12) Hearing sessions @ $1,200.00 | | | = $14,400.00 |
| Hearing Dates: | October 3, 2005 | 2 sessions | |
| | October 4, 3005 | 3 sessions | |
| | October 5, 2005 | 2 sessions | |
| | October 6, 2005 | 3 sessions | |
| | October 7, 2005 | 2 sessions | |
| Total Forum Fees | | | = $16,050.00 |

1. The Panel has assessed $16,050.00 of the forum fees to Respondent UBS.

FEE SUMMARY

1. Claimant is assessed and shall pay the following fees:

| | |
|---|---|
| Initial Filing Fee | = $ 600.00 |
| Total Fees | = $ 600.00 |
| Less payments | = $ 1,800.00 |
| Refund Owed to Claimant | = $ 1,200.00 |

2. Respondent UBS is assessed and shall pay the following fees:

| | |
|---|---|
| Initial Filing Fee | = $ 1,000.00 |
| Member Fees | = $10,000.00 |
| Forum Fees | = $16,050.00 |
| Total Fees | = $27,050.00 |
| Less payments | = $11,350.00 |
| Balance Due NASD Dispute Resolution | = $15,700.00 |

All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.

ARBITRATION PANEL

| | | |
|---|---|---|
| James Edwards Banks | - | Non-Public Arbitrator, Presiding Chairperson |
| Dennis W. Good | - | Public Arbitrator, Panelist |
| Lisa Bass Morris, Esq. | - | Public Arbitrator, Panelist |

Concurring Arbitrators' Signatures

James E. Banks
James Edwards Banks
Non-Public Arbitrator, Presiding Chairperson

November 2, 2005
Signature Date

Dennis W. Good
Public Arbitrator, Panelist

Signature Date

Lisa Bass Morris, Esq.
Public Arbitrator, Panelist

Signature Date

November 4, 2005
Date of Service (For NASD Dispute Resolution office use only)

Concurring Arbitrators' Signatures

James Edwards Banks
Non-Public Arbitrator, Presiding Chairperson

Signature Date

Dennis W. Good
Public Arbitrator, Panelist

11-2-05
Signature Date

Lisa Bass Morris, Esq.
Public Arbitrator, Panelist

Signature Date

November 4, 2005
Date of Service (For NASD Dispute Resolution office use only)

Concurring Arbitrators' Signatures

James Edwards Banks
Non-Public Arbitrator, Presiding Chairperson

Signature Date

Dennis W. Good
Public Arbitrator, Panelist

Signature Date

Lisa Bass Morris, Esq.
Public Arbitrator, Panelist

10/1/05
Signature Date

November 4, 2005
Date of Service (For NASD Dispute Resolution office use only)

TOTAL P.08

# FORM U-5
# UNIFORM TERMINATION NOTICE FOR SECURITIES INDUSTRY REGISTRATION

**U5 - FULL**
**02/13/2003**

Rev. Form U-5 (03/2002)

***NOTICE TO THE INDIVIDUAL WHO IS THE SUBJECT OF THIS FILING***

***Even if you are no longer registered you continue to be subject to the jurisdiction of regulators for at least two years after your registration is terminated and may have to provide information about your activities while associated with this firm. Therefore, you must forward any residential address changes for two years following your termination date or last Form U-5 amendment to: CRD Address Changes, P.O. Box 9495, Gaithersburg, MD 20898-9495.***

## 1. GENERAL INFORMATION

| **First Name:** | **Middle Name:** | **Last Name:** | **Suffix:** |
|---|---|---|---|
| W. | WELLS | VAN PELT | JR |
| ***Firm* CRD #:** | ***Firm* Name:** | **CRD Branch #:** | ***Firm* NFA #:** |
| 8174 | UBS PAINEWEBBER INC. | | |
| ***Firm* Billing Code:** | ***Individual CRD #*:** | **Individual SSN:** | **Individual NFA #:** |
| C40 | 453276 | 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 | |

**Office of Employment Address Street 1:** THE OFFICE ON THE PARK
**Office of Employment Address Street 2:** 6337 MORRISON BOULEVARD

| **City:** | **State:** | **Country:** | **Postal Code:** |
|---|---|---|---|
| CHARLOTTE | North Carolina | USA | 28211 |

**Private Residence Check Box:**
If the Office of Employment address is a private residence, check this box. ☐

Rev. Form U-5 (03/2002)

## 2. CURRENT RESIDENTIAL ADDRESS

***NOTICE TO THE FIRM***

***This is the last reported residential address. If this is not current, please enter the current residential address.***

| From | To | Street | City | State | Country | Postal Code |
|---|---|---|---|---|---|---|
| 08/2000 | PRESENT | 2207 SHARON ROAD | HARLOTTE | NC | USA | 28207 |



Rev. Form U-5 (03/2002)

## 3. FULL TERMINATION

**Is this a *FULL TERMINATION*?** ◉ **Yes** ○ **No**
Note: A "Yes" response will terminate ALL registrations with all *SROs* and all *jurisdictions*.

**Reason for Termination:** * Discharge * Provide an explanation below

CONCERNS ABOUT CONDUCT REGARDING TRANSACTIONS AT AND NEAR THE CLOSE IN A CUSTOMERS"S ACCOUNT

EXHIBIT J

Rev. Form U-5 (03/2002)

## 4. DATE TERMINATED

**Date Terminated** (MM/DD/YYYY): 01/15/2003
A complete date of termination is required for full or partial termination. This date represents the actual date that the termination of registration is effective.

Rev. Form U-5 (03/2002)

## 6. AFFILIATED FIRM TERMINATIONS

No Information Filed

Rev. Form U-5 (03/2002)

## 7. DISCLOSURE QUESTIONS

**IF THE ANSWER TO ANY OF THE FOLLOWING QUESTIONS IN SECTION 7 IS 'YES', COMPLETE DETAILS OF ALL EVENTS OR PROCEEDINGS ON APPROPRIATE DRP(S). IF THE INFORMATION IN SECTION 7 HAS ALREADY BEEN REPORTED ON FORM U-4 OR FORM U-5, DO NOT RESUBMIT DRPs FOR THESE ITEMS. REFER TO THE EXPLANATION OF TERMS SECTION OF FORM U-5 INSTRUCTIONS FOR EXPLANATION OF ITALICIZED WORDS.**

### Investigation Disclosure

| | YES | NO |
|---|---|---|
| **7A.** Currently is, or at termination was, the individual the subject of an *investigation* or *proceeding* by a domestic or foreign governmental body or *self-regulatory organization* with jurisdiction over *investment-related* businesses? | ○ | ● |

### Internal Review Disclosure

| | YES | NO |
|---|---|---|
| **7B.** Currently is, or at termination was, the individual under internal review for fraud or wrongful taking of property, or violating *investment-related* statutes, regulations, rules or industry standards of conduct? | ○ | ● |

### Criminal Disclosure

| | YES | NO |
|---|---|---|
| **7C.** While employed by or associated with your *firm*, or in connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual: | | |
| **1.** convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to any *felony*? | ○ | ● |
| **2.** *charged* with any *felony*? | ○ | ● |
| **3.** convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor involving*: investments or an *investment-related* business, or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? | ○ | ● |
| **4.** *charged* with a *misdemeanor* specified in 7(C)(3)? | ○ | ● |

### Regulatory Action Disclosure

| | YES | NO |
|---|---|---|
| **7D.** While employed by or associated with your *firm*, or in connection with events that occured while the individual was employed by or associated with your *firm*, was the individual *involved* in any *disciplinary action* by a domestic or foreign governmental body or *self regulatory organization* (other than those designated as a "*minor rule violation*" under a plan approved by the U.S. Securities and Exchange Commission) with jurisdiction over the *investment-related* businesses? | ○ | ● |

UBS 00935

**Customer Complaint Disclosure**

| | YES | NO |
|---|---|---|
| **7E.** 1. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual named as a respondent/defendant in an *investment-related*, consumer-initiated arbitration or civil litigation which alleged that the individual was *involved* in one or more *sales practice violations* and which: | | |
| **(a)** is still pending, or; | ○ | ◉ |
| **(b)** resulted in an arbitration award or civil judgment against the individual, regardless of amount, or; | ○ | ◉ |
| **(c)** was settled for an amount of $10,000 or more. | ○ | ◉ |
| 2. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated complaint, not otherwise reported under question 7(E)(1) above, which alleged that the individual was *involved* in one or more *sales practice violations*, and which complaint was settled for an amount of $10,000 or more? | ○ | ◉ |
| 3. In connection with events that occurred while the individual was employed or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated, written complaint, not otherwise reported under questions 7(E)(1) or 7(E)(2) above, which: | | |
| **(a)** would be reportable under question 14I(3)(a) on Form U-4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U-4 by your *firm*; or | ○ | ◉ |
| **(b)** would be reportable under question 14I(3)(b) on Form U-4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U-4 by your *firm*. | ○ | ◉ |

Rev. Form U-5 (03/2002)

**8. SIGNATURE**

Please Read Carefully

All signatures required on this Form U-5 filing must be made in this section.

A "Signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature.

8A. FIRM ACKNOWLEDGMENT
This section must be completed on all U-5 form filings submitted by the *firm*.

8B. INDIVIDUAL ACKNOWLEDGMENT AND CONSENT
This section must be completed on amendment U-5 form filings where the individual is submitting changes to Part II of the INTERNAL REVIEW DRP or changes to Section 2 (CURRENT RESIDENTIAL ADDRESS).

**8A. FIRM ACKNOWLEDGMENT**

I VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED IN AND WITH THIS FORM.

| **Person to contact for further information** | **Telephone # of person to contact** |
|---|---|
| ERIC SELTZER | 201-352-6669 |
| **Signature of *Appropriate Signatory*** | **Date (MM/DD/YYYY)** |

UBS 00936

| RAYMOND ROBERTELLO | 02/13/2003 |
| --- | --- |
| Type or Print Name of Appropriate Signatory | |

Rev. Form U-5 (03/2002)

**INVESTIGATION DRP**

No Information Filed

Rev. Form U-5 (03/2002)

**INTERNAL REVIEW DRP**

No Information Filed

Rev. Form U-5 (03/2002)

**CRIMINAL DRP**

No Information Filed

Rev. Form U-5 (03/2002)

**REGULATORY ACTION DRP**

No Information Filed

Rev. Form U-5 (03/2002)

**CUSTOMER COMPLAINT DRP**

No Information Filed

**UBS 00937**

NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.

-----------------------------------------------------x

In the Matter of the Arbitration Between
W. Wells Van Pelt, Jr.,

Claimant,

Case No. 03-

-against-

**STATEMENT OF CLAIM**

UBS Financial Services, Inc.
and Michael Williams,

Respondents.

-----------------------------------------------------x




Claimant Wells Van Pelt, Jr., has been in the securities industry for 30 years, both as a registered representative and a branch office manager and had a clean record until UBS terminated his employment and filed a Form U-5 stating that his termination was for: "Concerns about conduct regarding transactions at and near the close in a customer's account." **Even then, UBS answered "no" to all questions in the Disclosure Section of the U-5 concerning any investigation, internal review, criminal disclosure or regulatory disclosure.** A copy of Wells' Form U-5 is attached as Exhibit A. **The effect of Respondents' wrongful conduct has been to destroy the career of a man who has never had a customer complaint** and received many letters of praise from his superiors both at UBS and previously at Salomon Smith Barney. Although Wells and his attorneys asked that UBS allow Wells to resign, **UBS refused even in the face of strong legal authority that their position was unreasonable and untenable.** A letter from Wells' attorney Peter Crane Anderson to John O'Connell in the UBS Legal Department sets forth the issues very cogently but UBS consistently **refused to reconsider** their decision. A copy of this letter is attached as Exhibit B.

By terminating Wells' employment with a black mark on his record, Respondents deliberately intended to **prevent him from finding employment with another firm and to keep his 800+ customer accounts and $60 million in assets under management.** Respondents' plan was made clear due to their refusal to tell Wells' customers who called looking for him where he was or why he was no longer there. UBS then had its own brokers call Wells' customers and solicit their accounts. Respondents' bad faith is shown in that even after Wells and his attorneys notified UBS of his new employment, **UBS in bad faith continued to tell his customers that they did not know where he was or how to reach him.**

At the time of his termination, Wells was 56 years old, the sole support of his wife and 3 children (ages 3, 5 and 17), and was among the top 25% of producers at UBS. Many of Wells' customers had been with him since his days at Salomon Smith Barney and 95% of

him to come to PaineWebber in 1995. These customers had also followed Wells in 1999, when he left PaineWebber and moved to J.C. Bradford, which was later acquired by PaineWebber, becoming UBS PaineWebber. If Respondents had permitted Wells to resign, **there is every reason to believe that his loyal customer base would have stayed with him when he joined a new firm following UBS.** However, Wells was told by firm after firm that they could not even interview him in view of the Form U-5 filed by UBS. As a result of UBS's conduct, Wells' production has dropped from more than $400,000 a year to a mere $150,000 and his income from $160,000 to only $40,000 a year. At age 56, he does not have time left to build up a new book of business.

Even after ruining Wells' reputation in the community and preventing him from employment with a comparable firm, **UBS sent him a letter threatening that if he contacted any of his prior clients other than relatives, they would file suit against him for damages and injunctive relief.** This represents an outright wrongful attempt of UBS to steal the clients that Wells built up over a period of almost 30 years and should not be countenanced by this arbitration panel. In addition, QBS demanded $17,676.54 remaining on the employee forgivable loan ("EFL") that Wells received when PaineWebber purchased J.C. Bradford even though it was UBS alone that prevented him from fulfilling his EFL contract. UBS also took from Wells $3,900 in voluntary deferred compensation.

It is ironic that UBS chose a compliance issue as a basis for firing Wells because he has always been very compliance-oriented. While he was branch office manager of PaineWebber's Winston-Salem branch office, his branch received two clean internal audits and no brokers under his supervision received any customer complaints based on conduct that occurred on his watch while he was branch office manager. **Moreover, Wells has never had a customer complaint in 30 years as a broker and branch office manager.**

The only rational conclusion is that UBS's stated basis for firing Wells was a mere pretext for improper reasons. Respondents appeared to be searching for some basis to justify firing Wells. Following the annual compliance audit, UBS notified Wells in November of 2002 that he was "in trouble" for having outside employment without authorization due to serving on the board of Information Architects. **Wells proved to UBS Compliance that he had not only filed a written request for approval but also was told by his branch office manager that he had received Compliance's approval. UBS itself duly reported the outside employment to the NASD, showing their awareness of Wells' request and their approval.**

On information and belief, Respondent Michael Williams engineered and was the architect of the plan to fire Wells and take his clients. When the November attempt was unsuccessful and put aside by Respondents, Williams then reviewed all trades Wells made

for customers in Information Architects, of which Wells was a board member. The only trades Williams were made for Bob Gruder, who was Wells' long-time customer and CEO of Information Architects. Mr. Gruder had informed Wells that he wished to purchase $10-15,000 of the company's stock so he could show his support for the company. **The trades were all unsolicited and were placed by the customer, Mr. Gruder, based on his own timing**. After Mr. Gruder first spoke to Wells concerning buying the stock, Wells contacted UBS's Compliance Department to see if there were any rules he must follow in making the trades. He was told that there were no rules but that the company may have its own rules or procedures and he should contact the company. When he did this, he was told there was no prohibition or any other company rule on this type of purchase.

**There was no attempt by Wells to manipulate the price of the stock and Wells had no motive to do so.** Wells personally owned only a small amount of the stock and his customers owned no more than 5,000 shares. Mr. Gruder's purchases had no appreciable effect on the market price of the stock and contrary to UBS's statements to Wells, there was no purpose to keep the price of the stock above $1.00 to prevent delisting in that the company could meet neither the current $4 million capital requirement nor the future $10 million capital requirement for listing and would be delisted in any event, regardless of the stock price.

Nonetheless, UBS used this as a pretext to fire Wells and ruin his 30-year career in the industry. None of UBS's attempted justifications for Wells' termination makes any sense in that Wells (1) sought guidance from Compliance; (2) always followed whatever instruction they gave him; (3) had no motive to manipulate the stock of Information Architects; (4) acted solely on the customer's instructions; and (5) did not in fact manipulate the price of the stock.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Wrongful Termination)

Even though North Carolina is an employment "at will" state, which normally would not support a cause of action for wrongful termination, federal courts for almost 30 years have held that when wrongful termination claims are not specifically excluded under the parties' arbitration agreement, arbitrators have the power to grant such claims even if an "at will" doctrine would not permit such claims. *See* Shearson Hayden Stone v. Liang, 653 F.2d 310, 312-13 (7th Cir. 1981) ("It has been held repeatedly that an agreement to arbitrate disputes about employee discharges **implies a requirement that discharges be only for 'just cause.'**"); PaineWebber v. Agron, 49 F.3d 347 (8th Cir. 1995)("[The requirement to

arbitrate] necessarily alters the employment relationship from at-will to something else–**some standard of discernible cause is inherently required in this context where an arbitration panel is called on to interpret the employment relationship**....Accordingly, the arbitration panel had the power to determine whether the firing was justified."); Advest v. McCarthy, 914 F.2d 6 (1st Cir. 1990) ("[A]rbitrators possess latitude in crafting remedies as wide as that which they possess in deciding cases....**That leeway is at its zenith when, as here, the arbitration clause imposes no limitations on the choice of remedies**....")

North Carolina courts have established an exception to the employment-at-will doctrine under the general doctrine of violation of public policy. North Carolina Equal Employment Practices Act ("EEPA") provides:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. General Statutes § 143-422.2. Although federal courts have held that the EEPA does not create a private right of action, in Jackson v. Blue Dolphin Communications of North Carolina, 226 F.Supp. 2d 785, 792 (W.D.N.C. 2002), the Court held "Plaintiffs, however, can properly allege a wrongful discharge in violation of public policy, with that public policy being the anti-discrimination policy of the NCEEPA." Amos v. Oakdale Knitting Co., 331 N.C. 248, 416 S.E.2d 166, 173 (N.C. 1992) ("Our present task is to determine whether we should adopt a public policy exception to the employment-at-will doctrine." Coman, 325 N.C. at 175, 381 S.E.2d at 447. We did.")

Thus, Respondents are not protected from the consequences of their wrongful discharge of Wells by relying on the employment-at-will doctrine.

## SECOND CAUSE OF ACTION
## (Defamation)

It has long been the rule that libel (or written defamation) is presumed to be actionable based on allegations that an individual has committed some impropriety or inadequacy in performing a trade or profession. It is beyond dispute that the Form U-5 filed by UBS meets this standard in that it reads that Wells Van Pelt was terminated for cause due to "Concerns about conduct regarding transactions at and near the close in a customer's account." This was a deliberate decision on the part of UBS, Michael Williams and Ronald Fleischman, as Wells' supervisors and the UBS Legal Department attorneys, who were requested by Wells' counsel to allow him to resign instead of firing him outright. Respondents cannot now claim that they were simply following procedure in terminating an employee for cause. Wells' attorneys clearly explained to the UBS attorneys why the claimed violation of

regulations on which they rely is not applicable. *See* Exhibit B. The language used by UBS is clearly defamatory and relates solely to Wells' business and employment. As previously alleged, Wells' attorneys made UBS aware of the harm that such language would cause Wells in connection with his career as a stock broker. The mere fact that UBS phrased the "cause" in terms of "concerns" does not prevent a finding of liability. They were made aware by Wells' attorneys that **the allegation was false and refused to change the language they used on Wells' Form U-5**. In addition, they knew the effect that a termination for cause would have on Wells' ability to find future employment as a stock broker due to the requirement that any hiring firm would have to seek clearance from UBS before they could hire Wells. Due to this requirement, Wells had to inform every prospective employer with whom he spoke of the reason for his termination. Most firms told Wells they could not even interview him for employment under the circumstances. The Form U-5 is easily obtainable by any individual from the NASD website or from any of the regulatory authorities with which the form is filed.

**THIRD CAUSE OF ACTION**
**(Intentional Interference with Prospective Contractual Relations)**

UBS refused to inform Wells' customers how to reach him or to disclose his new business affiliation even after they were informed of this by Wells and his attorneys. Numerous of Wells' customers, **brought to UBS by Wells and developed over his 30 years in the stock brokerage industry**, informed Wells that when they called UBS asking to speak with Wells, they were told by UBS employees that they did not know where he was or how to reach him. These customers were left to believe that there was something very wrong with Wells and that he had left UBS under suspicious circumstances.

The reason UBS did this when they clearly knew how to reach Wells is clear–they wanted to keep his 800+ customers--and even had numerous UBS brokers call Wells' customers soliciting their stock brokerage business. By preventing contact between Wells and his customers, UBS was more likely to retain their accounts, instead of having the accounts transferred to Wells at his new firm.

Several NASD NTMs establish the **absolute right of a customer to transfer** his or her account and **the absolute requirement of the broker dealer to transfer a customer's account on request**. The first is NTM 79-7 (February 13, 1979) which advises members:

> the Securities and Exchange Commission (SEC ) had issued a notice to broker/dealers stating that **unnecessary delays in transferring customer accounts, including delays accompanied by attempts to persuade customers not to transfer their accounts, are inconsistent with just and equitable principles of trade.**

*See* NTM 01-36.

As NTM 01-36 makes clear, there is real damage to the customers of a broker, who are kept from locating their broker during the course of an employment dispute between the broker and the firm:

> NASD Regulation believes that, as a matter of policy, customers should have the freedom to choose the registered representative and firms that service their brokerage accounts. Further, NASD Regulation is concerned that customers whose account transfer requests have been delayed in this manner could be deprived of brokerage services and access to their accounts while their registered representative and his or her former firm attempt to resolve an employment dispute.

*See* NTM 01-36.

The concerns expressed above in the Request for Comment, resulted in NTM 02-07 enacting the provisions as regulations in IM 2110-7:

> NASD Regulation has adopted Interpretive Material 2110-7, which provides that it is inconsistent with just and equitable principles of trade for a member to interfere with a customer's request to transfer his or her account in connection with the change in employment of the customer's registered representative.

NTM 02-07. Copies of NTM 01-36 and 02-07 are attached as Exhibit C.

In fact, NTM 02-07 makes it a "prohibited interference" for a firm to seek a judicial order or decree that would bar or restrict the submission, delivery, or acceptance of a written request from a customer to transfer his or her account." This does not prevent a firm, however, from pursuing "other remedies they may have arising from employment disputes with former registered representatives." **Deliberately misrepresenting** to a customer that they are not aware of the former registered representative's whereabouts should not be countenanced by this Arbitration Panel. Customer cannot exercise their right to transfer an account to a long-time broker if they are prevented from locating the broker. This is exactly what UBS chose to do after its wrongful termination of Wells' employment. By intentionally interfering with the ability of a customer to locate Wells, UBS has intentionally interfered with Wells' prospective contractual relations with his customers, **including those he brought to UBS with him from years of prior employment with Salomon Smith Barney.** UBS even goes so far as to claim that all of Wells' prior customers belong to UBS although they had no role in developing the broker-client relationship. This is inequitable and violates the right of a customer to follow a long-time broker to another firm.

## FOURTH CAUSE OF ACTION
## (Breach of N.C. Wages and Hours Act)

When UBS wrongfully terminated Wells' employment and **refused to pay him his**

**bonus for the prior year and commissions that he had already earned,** UBS violated the North Carolina Wages and Hours Act, N.C. General Statutes § 95-25.22. Subsection (a) of this section provides for liability on the part of an employer for any amounts due to the employee under § 95-25.6 through § 95-25.12, plus interest at the legal rate. Subsection (a1) provides for liquidated damages of all such amounts due to the employee; subsection (d) further provides for "costs and fees of the action and reasonable attorneys' fees to be paid by the defendant." An employer is required to pay a bonus and commissions under the Act unless it has established terms under which the bonus or commissions will not be paid and made those known to the employee in advance. Once the employee has performed the work necessary to earn the wages and benefits, the Act **requires the employer to make the payments under the Act.**

**FIFTH CAUSE OF ACTION**
**(Violation of Age Discrimination in Employment Act of 1967)**
**(Against UBS only)**

In the alternative, it is claimed that the reason for UBS's termination of Wells' employment is due to the improper motive of removing an older employee from employment at the firm. At the time that UBS terminated Wells' employment, he was over the age of 50. Congress passed the Age Discrimination in Employment Act, 29 U.S.C. § 631(a) ("ADEA"), to ensure that employees over the age of 40 would be protected from unwarranted termination of employment due to age. The statute applies only to the employer, and not to individual supervisors, although the conduct of a supervisor can lead to the liability of the employer, UBS. Under the principles set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to set forth a *prima facie* case, Wells need only show four factors: (1) he is a member of the protected age group; (2) his employment was terminated; (3) at the time of his termination, he was adequately performing his job at the level that met his employer's expectations; and (4)discharge occurred under circumstances that raise a reasonable inference of unlawful age discrimination. *See. e.g.* Halperin v. Abacus Tech. Corp., 128 F.3d 191, 201 (4th Cir. 1997).

Any nominal reason cited by UBS for terminating Wells' employment is merely pretextual. The United States Supreme Court's decision in Desert Palace, Inc. v. Costa, 2003 WL 21310219 (2003), held that in mixed-motive cases under Title VII of the Civil Rights Act of 1991, 42 U.S. § 2000e-2(m), as to cases involving alleged sex discrimination, "an unlawful employment practice is established 'when the complaining party demonstrates that. .sex. .was a motivating factor for any employment practice, **even though other factors also motivated the practice.'** " (Emphasis added.) The Desert Palace Court held that "direct [evidence of discrimination] is not required" in a mixed-motive case. Id. at *1. The Court notes that it had previously held that "evidence that a defendant's explanation for an employment practice is 'unworthy of credence' is 'one form of *circumstantial evidence* that

is probative of intentional discrimination.' " Id. at *5. Thus the discriminatory motive need only be one, but not the only motive, for a reasonable jury to conclude, by a preponderance of the evidence, that "race, color, religion, sex or national origin was a motivating factor for any employment practice." Id. at *6. The ADEA is derived from Title VII, thus a similar rule should hold in cases of age discrimination.

In TWA v. Thurston, 469 U.S. 111, 125 (1985), the United States Supreme Court held that liquidated damages are punitive in nature and later reaffirmed that " 'a willful' violation of the ADEA is sufficient to support an award of liquidated damages requires a showing that the 'employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Hazen Paper Co. v. Biggins, 507 U.S. 604, 617 (1993). The employee does not need to "demonstrate that the conduct was outrageous, or provide direct evidence of the employer's motivation, or prove that age was the predominant, rather than a determinative, factor in the employment decision." Id. at 617.

Under the ADEA, Wells is entitled to recover (1) prospective relief in the form of front pay; (2) liquidated damages equal to the amount of back pay owed to him in view of Respondents' "willful violations" of the Act; and (3) attorneys' fees. 29 U.S.C. § 626(b).

**SIXTH CAUSE OF ACTION**
**(Tortious Interference with**
**Contractual Relationships)**

According to the Restatement (Second ) of Torts §766, a person, in this case a corporation, who "intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract" is liable to the other for the loss resulting from the failure to perform.

North Carolina law is clear that there are five key elements to an intentional interference with a contract cause of action. They are: (1) a valid contract between the plaintiff and a third party; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff. *See United Laboratories, Inc. v. Kuykendall,* 322 N.C. 643, 370 S.E. 2d 375 (1988).

In the present case, the Claimant satisfies these five elements. Wells had a valid broker-client contractual relationship with his customers. These broker-client relationships were developed by Wells over his 30 years in the stock brokerage industry. USB had clear knowledge of the contractual relationships, and when Wells' clients called asking to speak with Wells after the wrongful termination, they were told by UBS employees that they did not know where Wells was or how to reach him. These customers were left to believe that

there was something very wrong with Wells and that he had left UBS under suspicious circumstances. The reason UBS did this when they clearly knew how to reach Wells is clear–they wanted to keep his 800+ customers and even had numerous UBS brokers call Wells' customers soliciting their stock brokerage business. By keeping Wells away from his customers, UBS was more likely to retain their accounts, instead of having the accounts transferred to Wells at his new firm. In doing this, USB tortiously interfered with Wells' contractual relationships with his clients, resulting in damages to Wells. As such, USB is responsible to Wells for any and all damages related to USB's intentional and improper interference with Wells' contractual relationships with his clients.

**SEVENTH CAUSE OF ACTION**
**(Breach of Duty of Good Faith and Fair Dealing)**

The North Carolina "Supreme Court has recognized that '[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.' " *Murray v. Nationwide Mutual Ins. Co.,* 123 N.C.App. 1, 19, 472 S.E.2d 358, 368 (1996) (quoting *Bicycle Transit Authority, Inc. v. Bell,* 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985)). USB, by virtue of its relationship with the Plaintiff, owed Wells a duty of good faith and fair dealing. USB breached this duty by repeatedly informing Wells' customers that USB did not know where Wells was or how he could be reached. USB knew where Wells was and how to contact him. However, USB elected not to inform Wells' customers, even after direct inquiry, of his contact information. USB's conduct was calculated for pecuniary gain and to strip Wells of his clients. As a result of USB's breach of the duty of good faith and fair dealing, Wells has been damaged in an amount to be determined by the trier of fact.

**EIGHTH CAUSE OF ACTION**
**(Conversion)**

There are two essential elements to a cause of action for conversion: (1) Ownership in the plaintiff; and (2) a wrongful conversion by defendant. *Gallimore v. Sink,* 25 N.C. App. 65, 218 S.E.2d 181 (1975). Wells can prove both. Plaintiff had owned valid broker-client contractual relationships with over 800 customers he developed over his 30 years in the stock brokerage industry. After Wells was wrongfully terminated, USB had its brokers contact Wells' customers to solicit their stock brokerage business. While this was going on, Wells' clients were told that USB did not know where Wells was or how to reach him. Wells' clients were left to believe that there was something very wrong with Wells and that he had left UBS under suspicious circumstances. As such, Wells has a cause of action for conversion.

## NINTH CAUSE OF ACTION
## (Civil Conspiracy)

Under a cause of action for conspiracy there must be an act or acts committed in pursuance of the conspiracy that would serve as the predicate, *i.e.*, an unlawful act or a lawful act done in an unlawful manner which damaged plaintiff. The acts of Respondent Michael Williams, UBS's regional manager, for the region containing the Charlotte, N.C. branch office in conspiracy with UBS's Charlotte, N.C. branch office manager, Ronald Fleischman, to terminate Wells' employment for improper purposes, as set forth above, constitute civil conspiracy to injure Claimant.

A cause of action for a civil conspiracy under North Carolina law is really an action for damages caused by acts in furtherance of the conspiracy and not for the conspiracy itself. *Johnson v. Beverly-Hanks & Assoc., Inc.*, 97 N.C.App. 335, 343, 388 S.E.2d 584, 588-89 (1990) (noting that there is no cause of action for civil conspiracy unless the conspiracy results in damage to plaintiff); *see also, Dalton v. Camp,* 135 N.C.App. 32, 42, 519 S.E.2d 82, 89 (1999) (noting that there is no civil conspiracy cause of action per se). A claim for civil conspiracy requires showing "an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way that results in damages to the claimant." *Id.*, at 42, 519 S.E.2d at 89 (Citations omitted.). The claimant must also prove that an "overt act" was committed by at least one conspirator in furtherance of the conspiracy. *Dickens v. Puryear,* 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981). Once the elements of a civil conspiracy are established, all conspirators are jointly and severally liable for damages resulting from an act performed by any one of them in furtherance of the conspiracy. *Fox v. Wilson,* 85 N.C.App. 292, 301, 354 S.E.2d 737, 743 (1987).

"A claim for damages resulting from a conspiracy exists where there is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way, and, as a result of acts done in furtherance of, and pursuant to, the agreement, damage occurs to plaintiff." *Fox v. Wilson,* 85 N.C.App. 292, 354 S.E.2d 737, 743 (1987).

## TENTH CAUSE OF ACTION
## (Negligent Infliction of Emotional Distress)

A claim for negligent infliction of emotional distress requires a plaintiff to establish that (1) the defendant engaged in negligent conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff to suffer severe emotional distress; and (3) the conduct did in fact cause plaintiff to suffer severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990).

Wells has suffered severe emotional distress as a result of Respondents' conduct in

firing him without justification and utilizing his Form U-5 to deprive him of the ability to gain employment that would allow him to earn a living comparable to his production at UBS. Respondents' wrongful termination of Wells' employment in the face of the legal authority presented by his attorneys that their actions were without legal basis and a pretext for his termination, as well as Respondents' actions in deceiving Wells' clients into thinking that he left UBS under suspicious circumstances by actively refusing to disclose to Wells' clients where he was and how they could contact him although Respondents were provided with this information, is negligent at best, if not intentional conduct. The effect on Wells was both **foreseeable and severe**. At a hearing in this matter, Claimant will offer expert testimony as to the severity of the effect on Wells of Respondents' conduct. Respondents' wrongful firing of Wells without legal basis, wrongful filing of a false Form U-5 as to the reason for termination, wrongful taking of Wells' customers by preventing them from contacting him, and wrongfully causing Wells to be unable to find employment at a comparable national brokerage firm, caused long-lasting detriment to Wells, due to the need to support his family, to educate his minor children and the unlikelihood at his age, that he will be able to reach his prior level of production and earning.

UBS's bad faith in connection with terminating Wells' employment in 2003 is consistent with their unfair and improper treatment of him in 1998, when he was previously employed by then-PaineWebber. After Respondent Michael Williams recruited Wells in 1995 to leave SSB and come over to PaineWebber as branch office manager of its Winston-Salem, N.C. branch office, Wells increased production in the branch by 50% and increased the number of registered representatives in the office from 6 to 8, while increasing his own production by 10-15% per year, all without any customer complaints. Wells also received numerous letters from PaineWebber management concerning his outstanding performance as a broker and was invited by PaineWebber to address his fellow branch office managers at a 1997 annual conference of branch office managers in New Jersey at PaineWebber's administrative headquarters. Comparison of Wells' performance as a branch office manager with his peer branch office managers shows Wells to have been superior in numerous categories.

In spite of Wells' outstanding performance, a mere 3 years after Wells moved from Charlotte, to Winston-Salem, N.C. to take this job with PaineWebber, Respondent Michael Williams told him that he was removing him as Winston-Salem branch office manager and that he could stay there as a registered representative or the firm would move him back to Charlotte as a registered representative. When Wells asked Williams why he was removing Wells as branch office manager, Williams refused to tell him. In spite of this unfair conduct, Wells moved back to Charlotte and worked as a registered representative until his EFL was forgiven **in full** before resigning to go to and moving to J.C. Bradford. When Bradford was bought by PaineWebber, Wells was faced with the adverse situation of returning to PaineWebber or having to move his customer accounts to yet another firm, which he did not want to do. Accordingly, he reluctantly accepted employment with PaineWebber again,

including a small EFL, not suspecting that PaineWebber would once again treat him unfairly.

## DAMAGES

As a result of Respondents' wrongful conduct, Wells Van Pelt has been injured in the amount of in excess of $10,000,000 damages, as follows:

1. Loss of income in the amount of $110,000 per year until his youngest child has completed college, approximately 20 years, plus expected growth in income of 10-20% per year consistent with Claimant's prior 3 years of business, growth in production and increase in new customer accounts;
2. Withdrawal of $60,000-80,000 from Claimant's 401k for living expenses and support of his family in 2003, plus taxes and penalties due to premature withdrawal, all necessitated by Respondents' wrongful conduct;
3. Legal fees in an amount to be proved at a hearing, but in no event less than $70,000, including $25,000 already paid to counsel to represent him in the inquiry;
4. Net commissions in the amount of $16,000, which Claimant earned but was not paid by UBS;
5. Deferred compensation in the amount of $3,900 not paid to Claimant by UBS;
6. Bonus in the amount of $14,000 for 2002, which UBS refused to pay Claimant; and
7. Loss of vesting in Partners Plus, 401k and other plans, due to premature termination of employment.
8. Over 1,000 in stock options with a strike price of $50 (UBS is now at $71).

**WHEREFORE**, Claimant W. Wells Van Pelt, Jr. respectfully requests (1) an award in the amount of $10,000,000 in actual damages;(2) amendment of his Form U-5 to remove any reference to termination for cause; (3) copies of all his customer records; (4) costs and expenses of this arbitration, (5) attorneys' fees; (6) interest on damages at the N.C. statutory rate of 8%; (7) punitive damages; and (8) such other and further relief as may appear just to this Arbitration Panel.

Respectfully submitted,

[signature]

Sarah G. Anderson
Chris Staubes, III
Clawson & Staubes, LLC
304 Meeting Street
Charleston, South Carolina 29401-1544
(843) 577-2026

Attorneys for Claimant

Charleston, South Carolina

January 28, 2004

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing pleading has been served upon opposing counsel by mailing a copy properly addressed and with sufficient postage affixed thereto on this 28th day of January, 2004.

[signature]

# FORM U-5
# UNIFORM TERMINATION NOTICE FOR SECURITIES INDUSTRY REGISTRATION

**U5 - FULL**
**02/13/2003**

Rev. Form U-5 (03/2002)

***NOTICE TO THE INDIVIDUAL WHO IS THE SUBJECT OF THIS FILING***

***Even if you are no longer registered you continue to be subject to the jurisdiction of regulators for at least two years after your registration is terminated and may have to provide information about your activities while associated with this firm. Therefore, you must forward any residential address changes for two years following your termination date or last Form U-5 amendment to: CRD Address Changes, P.O. Box 9495, Gaithersburg, MD 20898-9495.***

## 1. GENERAL INFORMATION

| | | | |
|---|---|---|---|
| **First Name:** W. | **Middle Name:** WELLS | **Last Name:** VAN PELT | **Suffix:** JR |
| ***Firm* CRD #:** 8174 | ***Firm* Name:** UBS PAINEWEBBER INC. | **CRD Branch #:** | ***Firm* NFA #:** |
| ***Firm* Billing Code:** C40 | ***Individual CRD #:*** 453276 | **Individual SSN:** 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 | **Individual NFA #:** |
| **Office of Employment Address Street 1:** THE OFFICE ON THE PARK | | **Office of Employment Address Street 2:** 6337 MORRISON BOULEVARD | |
| **City:** CHARLOTTE | **State:** North Carolina | **Country:** USA | **Postal Code:** 28211 |

**Private Residence Check Box:**
If the Office of Employment address is a private residence, check this box. ☐

Rev. Form U-5 (03/2002)

## 2. CURRENT RESIDENTIAL ADDRESS

***NOTICE TO THE FIRM***

***This is the last reported residential address. If this is not current, please enter the current residential address.***

| From | To | Street | City | State | Country | Postal Code |
|---|---|---|---|---|---|---|
| 08/2000 | PRESENT | 2207 SHARON ROAD | HARLOTTE | NC | USA | 28207 |

Rev. Form U-5 (03/2002)

## 3. FULL TERMINATION

**Is this a *FULL TERMINATION*?** ◉ **Yes** ○ **No**
Note: A "Yes" response will terminate ALL registrations with all *SROs* and all *jurisdictions*.

**Reason for Termination:** * Discharge * Provide an explanation below

CONCERNS ABOUT CONDUCT REGARDING TRANSACTIONS AT AND NEAR THE CLOSE IN A CUSTOMERS"S ACCOUNT

EXHIBIT "A"

Rev. Form U-5 (03/2002)

## 4. DATE TERMINATED

**Date Terminated** (MM/DD/YYYY): 01/15/2003

A complete date of termination is required for full or partial termination. This date represents the actual date that the termination of registration is effective.

Rev. Form U-5 (03/2002)

## 6. AFFILIATED FIRM TERMINATIONS

No Information Filed

Rev. Form U-5 (03/2002)

## 7. DISCLOSURE QUESTIONS

**IF THE ANSWER TO ANY OF THE FOLLOWING QUESTIONS IN SECTION 7 IS 'YES', COMPLETE DETAILS OF ALL EVENTS OR PROCEEDINGS ON APPROPRIATE DRP(S). IF THE INFORMATION IN SECTION 7 HAS ALREADY BEEN REPORTED ON FORM U-4 OR FORM U-5, DO NOT RESUBMIT DRPs FOR THESE ITEMS. REFER TO THE EXPLANATION OF TERMS SECTION OF FORM U-5 INSTRUCTIONS FOR EXPLANATION OF ITALICIZED WORDS.**

### Investigation Disclosure

| | YES | NO |
|---|---|---|
| **7A.** Currently is, or at termination was, the individual the subject of an *investigation* or *proceeding* by a domestic or foreign governmental body or *self-regulatory organization* with jurisdiction over *investment-related* businesses? | ○ | ◉ |

### Internal Review Disclosure

| | YES | NO |
|---|---|---|
| **7B.** Currently is, or at termination was, the individual under internal review for fraud or wrongful taking of property, or violating *investment-related* statutes, regulations, rules or industry standards of conduct? | ○ | ◉ |

### Criminal Disclosure

| | YES | NO |
|---|---|---|
| **7C.** While employed by or associated with your *firm*, or in connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual: | | |
| **1.** convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to any *felony*? | ○ | ◉ |
| **2.** *charged* with any *felony*? | ○ | ◉ |
| **3.** convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor involving*: investments or an *investment-related* business, or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? | ○ | ◉ |
| **4.** *charged* with a *misdemeanor* specified in 7(C)(3)? | ○ | ◉ |

### Regulatory Action Disclosure

| | YES | NO |
|---|---|---|
| **7D.** While employed by or associated with your *firm*, or in connection with events that | ○ | ◉ |

occured while the individual was employed by or associated with your *firm*, was the individual *involved* in any *disciplinary action* by a domestic or foreign governmental body or *self regulatory organization* (other than those designated as a "*minor rule violation*" under a plan approved by the U.S. Securities and Exchange Commission) with jurisdiction over the *investment-related* businesses?

**Customer Complaint Disclosure**

| | YES | NO |
|---|---|---|
| **7E.** 1. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual named as a respondent/defendant in an *investment-related*, consumer-initiated arbitration or civil litigation which alleged that the individual was *involved* in one or more *sales practice violations* and which: | | |
| (a) is still pending, or; | ○ | ◉ |
| (b) resulted in an arbitration award or civil judgment against the individual, regardless of amount, or; | ○ | ◉ |
| (c) was settled for an amount of $10,000 or more. | ○ | ◉ |
| 2. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated complaint, not otherwise reported under question 7(E)(1) above, which alleged that the individual was *involved* in one or more *sales practice violations*, and which complaint was settled for an amount of $10,000 or more? | ○ | ◉ |
| 3. In connection with events that occurred while the individual was employed or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated, written complaint, not otherwise reported under questions 7 (E)(1) or 7(E)(2) above, which: | | |
| (a) would be reportable under question 14I(3)(a) on Form U-4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U-4 by your *firm*; or | ○ | ◉ |
| (b) would be reportable under question 14I(3)(b) on Form U-4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U-4 by your *firm*. | ○ | ◉ |

Rev. Form U-5 (03/2002)

**8. SIGNATURE**

Please Read Carefully

All signatures required on this Form U-5 filing must be made in this section.

A "Signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature.

8A. FIRM ACKNOWLEDGMENT
This section must be completed on all U-5 form filings submitted by the *firm*.

8B. INDIVIDUAL ACKNOWLEDGMENT AND CONSENT
This section must be completed on amendment U-5 form filings where the individual is submitting changes to Part II of the INTERNAL REVIEW DRP or changes to Section 2 (CURRENT RESIDENTIAL ADDRESS).

## 8A. FIRM ACKNOWLEDGMENT

I VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED IN AND WITH THIS FORM.

| **Person to contact for further information** | **Telephone # of person to contact** |
| --- | --- |
| ERIC SELTZER | 201-352-6669 |
| **Signature of *Appropriate Signatory*** | **Date** (MM/DD/YYYY) |
| RAYMOND ROBERTELLO | 02/13/2003 |
| Type or Print Name of Appropriate Signatory | |

Rev. Form U-5 (03/2002)

### INVESTIGATION DRP

No Information Filed

Rev. Form U-5 (03/2002)

### INTERNAL REVIEW DRP

No Information Filed

Rev. Form U-5 (03/2002)

### CRIMINAL DRP

No Information Filed

Rev. Form U-5 (03/2002)

### REGULATORY ACTION DRP

No Information Filed

Rev. Form U-5 (03/2002)

### CUSTOMER COMPLAINT DRP

No Information Filed