# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:05cv477

| | |
|---|---|
| W. WELLS VAN PELT, <br>     Plaintiff, <br><br> vs. <br><br> UBS FINANCIAL SERVICES, <br>     Defendant. | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** for the disposition of questions regarding discovery and scheduling. As set out in greater detail below, this matter is at its core an action to confirm an arbitration award. At the initial pretrial conference held before the undersigned on February 2, 2006, the parties jointly sought the Court's resolution of two questions: first, whether UBS could conduct limited discovery relevant to the possible bias of the arbitration panel chair; and second, what briefing schedule would be established on the principal issue of whether the arbitration award should be confirmed or vacated.

Having carefully considered the parties' written submissions, the parties' oral argument at the February 2, 2006 conference, the record, and the applicable authority, the undersigned will **deny** UBS's request for limited discovery and offers a briefing schedule for the remaining motions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff, W. Wells Van Pelt ("Van Pelt"), was employed by the Defendant, UBS Financial Services, Inc. ("UBS"), until UBS terminated his employment in January 2003. Van Pelt subsequently demanded arbitration against UBS and Michael Williams, an employee of UBS, by

1

filing a Statement of Claim and Uniform Submission Agreement with the National Association of Securities Dealers, Inc. ("NASD") in January, 2004 alleging therein a number of claims for relief related to the termination.

In April 2004, UBS and Williams submitted to the NASD a Statement of Answer, Counterclaim, and Motion to Dismiss, and signed Uniform Submission Agreement forms. Thereafter, the NASD appointed James Edward Banks, Dennis W. Good and Lisa Bass Morris to serve as the parties' arbitration panel, and Banks was selected to be the panel chairman. The panel denied respondents' motion in February 2005.

The arbitration hearing was scheduled by agreement for October 3 through 7, 2005. At the initial pre-hearing conference held on September 9, 2004, the parties affirmed that they accepted the panel's composition. On September 22, 2005, the NASD sent to the parties by facsimile and first class mail a marked-up Arbitrator Disclosure Report submitted by Mr. Banks. (See Doc. 6; Exhibit 1)[1] The Report contains Mr. Banks' handwritten notation, "my employment at Bank of America ended on August 23, 2005." The first page of the Report contains a handwritten correction of the date of Mr. Banks' termination from Bank of America. The typewritten entry immediately above the correction indicates that Mr. Banks had been retired following the end of his employment at Bank of America. Following receipt of Mr. Banks' amended disclosure, UBS did not request that Bank provide any additional information, or express any concern, regarding the circumstances of his retirement.[2]

---

[1] An Arbitrator Disclosure Report contains detailed biographical information and lists cases in which the arbitrator has ruled. Copies of the listed decisions are readily available for the parties to inspect via the NASD's website.

[2] Parties are permitted at any time to request arbitrators to furnish additional information under Rule 10308(b)(6).

At the start of the hearing, UBS indicated that it accepted the composition of the panel. Following the five-day arbitration hearing, UBS acknowledged on the record that it had a full and fair opportunity to be heard and did not lodge any protest or request any additional information regarding Mr. Banks. After the hearing, respondents filed motions to dismiss the claims against them. Van Pelt agreed to dismiss the claims against Michael Williams and to dismiss his ADEA claim against UBS. The panel denied UBS's motion to dismiss the remaining claims against it.

Following the hearing, the panel allowed the parties to submit post-hearing damage calculations. On November 4, 2005, the NASD served the arbitrators' unanimous decision finding UBS liable for damages of $2,471,330, plus costs. Additionally, the panel found that the statements explaining Van Pelt's termination in the Form U-5 were defamatory and recommended that UBS amend the termination comment.

Van Pelt subsequently filed a motion to confirm the arbitration award. UBS, now represented by new counsel, subsequently filed a motion to vacate the award, on, among other grounds, that it was the result of Chairman Banks' "evident partiality." UBS presently is requesting discovery to occur, specifically discovery of the Banks' employment records at Bank of America on the grounds that he may have failed to disclose, as required, some fact (i.e., the circumstances of his retirement from Bank of America) creating a reasonable impression of bias that could warrant vacating the award. Van Pelt has objected to allowing any discovery to occur.

## II. DISCUSSION

Van Pelt argues that the undersigned should deny UBS's post-award discovery request on two grounds. First, UBS has not offered sufficient evidence of impropriety on the part of Chairman Banks to warrant such post-award discovery. Second, any evidence of impartiality notwithstanding,

3

UBS waived the right to challenge the decision based on evident partiality when it knew of facts indicating possible partiality of an arbitrator but waited until an adverse award to pursue its concern.

### A. Sufficiency of Evidence

In order to vacate an arbitration award where a neutral arbitrator has the appearance of bias, the party asserting evident partiality has the "significant burden" of showing "specific evidence that indicate improper motives on the part of an arbitrator." See 9 U.S.C. § 10(a)(2); Remmey v. PaineWebber, Inc., 32 F.3d 143, 148 (4th Cir.1994); see also Ormsbee Dev. Co. v. Santa Fe Pacific R.R., 668 F.2d 1140, 1147 (10th Cir. 1982) (the evidence must be "direct, definite and capable of demonstration," and not "remote, uncertain, or speculative"). Although no Fourth Circuit case speaks directly as to whether a party attempt to discover from a nonparty such evidence as an arbitrator's employment records, the general rule is that the Federal Rules of Civil Procedure do not apply to post hoc questioning of arbitrators and that any discovery into arbitrator bias is handled pursuant to judicial supervision and only then in the limited situation where the movant presents clear evidence of impropriety. See Woods v. Saturn Distribution Corp., 78 F.3d 424, 430-31 (9th Cir. 1996). Courts should be particularly wary of "encourag[ing] the losing party to conduct a background investigation of each of the arbitrators." Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673, 683 (7th Cir.), cert. denied, 464 U.S. 1009, 104 S.Ct. 529 (1983). This limitation on discovery pertains even though it very well may be difficult to prove actual bias without discovery. See Portland General Elec. Co. v. U.S. Bank Trust Nat. Ass'n, 38 F.Supp.2d 1202, 1208 (D.Ore.1999), rev'd on other grounds, 218 F.3d 1085 (9th Cir. 2000); but cf. University Commons Urbana, Ltd. v. Universal Constructors Inc., 304 F.3d 1331, 1341 (11th Cir. 2002) (evidentiary fact-finding warranted when disclosure did not specify arbitrator's relationship with a party was on-going).

In the present case, UBS asserts that both federal law and the NASD Rules impose an affirmative duty on arbitrators to disclose any circumstances that may create an impression of possible bias, and the fact that an arbitrator failed to follow the disclosure requirements of the organization governing the arbitration is "highly significant" in deciding the existence of evident partiality on a motion to vacate. See Defendant's Response, p. 9 (citing Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145, 149, 89 S.Ct. 337 (1968)). UBS points out that Banks' second amended disclosure did not specify "whether the termination of his employment was voluntary or whether he offered to 'retire' at age 49 to avoid involuntary termination," and argues because Banks' "retirement" occurred just before he heard this case involving a terminated employee, the circumstances of his departure from Bank of America could be highly relevant to his ability to serve impartially. Therefore, the subpoena is necessary to see if Banks failed to disclose these details as required. See Defendant's Response at 10. UBS cites Paragraph 3 of the Award, requiring that the replacement language for the termination comment include the sentence "[a]lthough Mr. Van Pelt offered to resign rather than be terminated, his request was denied," and concludes "[s]uch criticism of UBS alone evidences partiality sufficient to vacate the Award if Banks was given the opportunity to retire from Bank of America to avoid involuntary termination less than two months prior to the arbitration hearing.

Having reviewed the record, the undersigned finds that UBS offers no evidence capable of demonstrating evident partiality. The asserted need to investigate further to see whether the Chairman may have failed to disclose some material circumstance, as required by NASD Rule 10312, that would create an appearance of bias is remote, circular, and speculative, and is insufficient on its face to justify the subpoena.

## B. Waiver

It is well-settled that a complaining party does not have "two strings to the bow," and generally a party waives the right to challenge the decision based on evident partiality when it knew, or could have known, of facts suggesting partiality of an arbitrator but waited until an adverse award to pursue its concern. For example, in another NASD arbitration case, Remmey v. PaineWebber, Inc., the Fourth Circuit rejected a post-arbitration challenge to an arbitrator, stating:

> Even if appellant could demonstrate that Johnson's discipline in 1980 somehow affected his impartiality, she fails to provide us with a reason why this objection was not raised prior to the arbitration. Remmey obtained the information concerning Johnson's discipline pursuant to the NASD's "Public Disclosure Program." Although Remmey did not avail herself of this program until after the completion of the arbitration process, the program was at her disposal before the arbitration began and nothing prevented Remmey from using it before participating in the arbitration. By raising this claim only after obtaining an adverse decision, Remmey's actions appear to constitute the ultimate attempt at a second bite. If this challenge were sustained, nothing would stop future parties to arbitration from obtaining allegedly disqualifying information, going through with the proceedings, and then coming forward with the information only if disappointed by the decision.

32 F.3d 143, 147-148 (4th Cir. 1994) cert. denied, 115 S. Ct. 903 (1995).

Likewise, in In re A.H. Robins Co., Inc., 223 B.R. 492 (E.D.Va. 1998), aff'd, Case No. 98-2309, 1999 WL 441988 (4th Cir. June 30, 1999), the Fourth Circuit affirmed the District Court's finding of waiver where the party subject to the adverse arbitration award sought to overturn the award on grounds that arbitrator failed to disclose his defense practice before the arbitration hearing. The Court held that the "Complainant and her lawyer thus knew, and could have known more had they pursued it, about [the arbitrator's] defense practice. . . .[The Complainant's] failure to question an arbitrator's impartiality precludes her from seeking a new arbitration hearing after the arbitrator has heard and ruled on merits of her case." A.H. Robins at 496-497.

Applying these principles to the present case, the undersigned finds that even if UBS could demonstrate the circumstances of Banks' employment somehow affected his impartiality, it has failed to provide the Court with a reason why this objection was not raised either prior to, or during, the arbitration. Although UBS contends that Banks' amended disclosure was not specific enough for the parties to gauge any potential bias, it offers no evidence that Banks amended disclosure was not sufficiently specific for the parties to gauge potential bias that additional fact-finding is now warranted. While UBS may not have had full knowledge of all the circumstances for which it now seeks discovery, Banks' handwritten addendum – "my employment at Bank of America ended on August 23, 2005" – could have triggered a request prior to the five days of hearing as to whether he resigned or was terminated. UBS could have submitted written questions to Banks or even requested additional time to exercise challenges after conducting an investigation of Chairman Banks' background. UBS, however, did none of this.

Thus, because UBS failed either to request information that could have been obtained pursuant to NASD rule 10308(b)(6) or invoke the recusal remedy provided in the arbitration rules, or even voice its concern before or during the hearing, the undersigned finds that UBS waived any right to challenge arbitrator Banks based on evident partiality.

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED THAT** the Defendant's request for discovery is **DENIED**.

**IT IS FURTHER ORDERED THAT** the parties shall now proceed to further briefing on the underlying contentions regarding whether the arbitration award shall be confirmed or vacated. Mr. Van Pelt shall file any further brief in support of confirming the award by July 13, 2006. UBS

shall file its response in support of vacating the award by July 27, 2006. Any reply from Mr. Van Pelt shall be due August 3, 2006.

**SO ORDERED.**

Signed: June 14, 2006

David C. Keesler
United States Magistrate Judge