IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| W. WELLS VAN PELT, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: |
| v. | ) | 05CV477-K |
| | ) | |
| UBS FINANCIAL SERVICES INC., | ) | |
| | ) | |
| Defendant. | ) | |

**UBS FINANCIAL SERVICES INC.'S REPLY
MEMORANDUM IN SUPPORT OF ITS MOTION TO VACATE**

Defendant UBS Financial Services Inc. ("UBSFS") submits this reply memorandum in further support of its Motion to Vacate the arbitration award rendered on November 4, 2005 by an National Association of Securities Dealers ("NASD") Arbitration Panel in favor of plaintiff ("Award").

**I. PLAINTIFF MISSTATES THE ISSUE CONCERNING THE PANEL'S REASONED AWARD.**

The Award states that (1) the explanatory sentence in the Form U-5 contained defamatory information; and (2) plaintiff was terminated by UBSFS due to "Concerns about conduct regarding transactions at and near the close in a customer's account following an internal investigation." Exhibit O, p. 3.[1] Plaintiff attempts to escape the impact of this clear, unequivocal and fatal language by arguing that this Court should ignore such language because

---

[1] Unless otherwise indicated, exhibit references herein refer to the exhibits attached to UBSFS's Memorandum of Law In Support of UBS Financial Services Inc. Motion to Vacate ("UBSFS's Brief").

the Panel not was required to issue a reasoned award in the underlying arbitration proceeding. This argument, however, misses the point.

UBSFS does not dispute that the Panel was not required to state its reasoning in the Award. Notwithstanding no obligation to state its reasoning, the Panel chose to do so and provided specific findings in the Award. Because the Panel chose to include the reasoning behind its Award, it is irrelevant whether the Panel was obligated to supply such reasoning. Indeed, when a panel chooses to provide its reasoning, a reviewing court must examine such reasoning to determine whether the Panel was applying the parties' contractual terms or their own form of rough justice. See Cannelton Indus., Inc. v. District 17, United Mine Workers of America, Local Union 8843, 951 F.2d 591, 594 (4th Cir. 1991) ("While arbitrators need not give their reasons for an award, . . . reviewing courts must rely on the arbitrator's reasoning to determine whether he was applying contractual terms or his own brand of industrial justice.").

As discussed in UBSFS's Brief, the Panel's finding that the explanatory sentence in the Form U-5 contained defamatory information was the only finding of wrongdoing in the Award. Plaintiff nevertheless argues that notwithstanding the sole finding of wrongdoing, "the evidence presented to the Arbitration Panel would have supported a substantial monetary award on the basis of any number of the legal theories that [plaintiff] relied upon." Plaintiff's Memorandum in Opposition to Defendant's Motion to Vacate Arbitration Award ("Plaintiff's Brief"), p. 14. Plaintiff's argument, however, was rejected by the Second Circuit in Hardy v. Walsh Manning Sec., L.L.C., 341 F.3d 126, 133 (2nd Cir. 2003). The Hardy court refused to consider alternative theories of liability when only one was provided by the arbitrators in the award, notwithstanding the fact that there may have been evidence sufficient to support alternative findings of liability. The Hardy court reasoned as follows:

4829-2995-0465.03
Case 3:05-cv-00477-RJC-DCK   Document 42   Filed 11/01/06   Page 2 of 12

> [The district court] is correct that "[t]he arbitrators were crystal clear in directing the respondents to pay petitioner a sum certain." But, once again, it is also crystal clear that the award states no other basis for liability than respondeat superior. The district court correctly found that a court must "confirm [an arbitrator's] award if [it is] able to discern any colorable justification for the arbitrator's judgment, even if that reasoning would be based on an error of fact or law." There may indeed be more than enough evidence in the record to find that [the respondent] should have been found primarily liable. But that is not what "the arbitrator's judgment" is in the instant case.. . . In our case, the Panel did write an opinion, at least to the extent of specifying a theory of liability, and remaining silent as to the other theories of liability proffered by [the claimant]. To infer from the facts that [the respondent] was also liable under any other theory of liability is to supply an alternate theory of liability where the Panel has already supplied one.

341 F.3d at 131 (internal citations omitted). Thus, this Court cannot ignore the Panel's sole finding of wrongdoing and uphold the Award based on some ground not relied upon by the Panel as plaintiff urges. See Harry Hoffman Printing, Inc. v. Graphic Commc'n Int'l Union, Local 261, 950 F.2d 95, 99 (2nd Cir. 1991) (reviewing court "cannot simply ignore the arbitral opinion" and uphold arbitrator's decision on some ground not relied upon him).

## II.  THE PANEL FOUND THAT THE STATED REASON FOR PLAINTIFF'S TERMINATION WAS TRUTHFUL.

Plaintiff's Form U-5 stated that he was terminated because of "[c]oncerns about conduct regarding transactions at and near the close in a customer''s [sic] account." Exhibit B, p. 1. The Panel found that plaintiff was terminated because of "[c]oncerns about conduct regarding transactions at and near the close in a customer's account following an internal investigation," and stated that "[t]here is no change recommended to the original reason for termination (i.e., discharge)." Exhibit O, pp. 3-4. There is no other language in the Award concerning the reason for plaintiff's termination. Thus, it is clear on the Award's face that the Panel found that the explanatory sentence in the Form U-5 was true.

3

4829-2995-0465.03

Case 3:05-cv-00477-RJC-DCK   Document 42   Filed 11/01/06   Page 3 of 12

### A. Plaintiff's Statement Of Facts Attempts To Alter The Wording Of The Explanatory Sentence In The Form U-5.

While plaintiff does not contest that he was terminated because of "concerns about conduct regarding transactions at and near the close in a customer's account," plaintiff urges this Court to ignore the explanatory sentence and speculate as to how individuals in the industry may interpret it. Specifically, instead of addressing the language in the explanatory sentence, plaintiff states that "[a]nyone in the industry would read the meaning of the ground" as a finding of "market manipulation in a client's account." Plaintiff's Brief, p. 3.[2] The explanatory sentence, however, does not state that plaintiff was found guilty of or terminated because of "market manipulation in a customer's account." Further, there is no information in the Form U-5 to suggest that plaintiff was found guilty of "market manipulation in a customer's account." Instead, the Form U-5 states that plaintiff was terminated because of "concerns" about certain conduct, which the Panel found to be true. The word "concerns" does not does not equal a finding of guilt as plaintiff argues. Thus, plaintiff's argument that UBSFS stated in the Form U-5 that it had found plaintiff guilty of market manipulation in a customer's account is without factual support.

### B. The Panel's Recommended Amendments To The Form U-5 Are Not Relevant To The Truthfulness Of The Explanatory Sentence.

Plaintiff argues that the Panel's recommended amendments to the Form U-5 concerning the results of the SEC's investigation and the Panel's finding concerning plaintiff's conduct indicates that the Panel found that the explanatory sentence was false. The recommended amendments, however, do not address the reason for plaintiff's termination.[3] Instead, they

---

[2] Plaintiff is now employed by AG Edwards, a major brokerage firm that hired him notwithstanding the existing language UBSFS published on his Form U-5.

[3] Plaintiff bases his argument on the Panel's following recommended amendments: "The Securities and Exchange Commission ("SEC") conducted an investigation regarding those transactions. The SEC did not initiate any

4

4829-2995-0465.03

Case 3:05-cv-00477-RJC-DCK    Document 42    Filed 11/01/06    Page 4 of 12

address the fact that the (1) SEC did not initiate an enforcement action against plaintiff following its investigation; and (2) Panel did not find evidence of misconduct by plaintiff while considering his wrongful termination claim.

Initially, the SEC's decision not to pursue an enforcement action is irrelevant to whether UBSFS terminated plaintiff because of concerns about conduct regarding transactions at and near the close in a customer's account. There is no evidence suggesting that the SEC found that plaintiff was terminated for any reason other than the stated reason.

Further, while the Panel did not find any evidence of misconduct by plaintiff, the Panel nevertheless found that plaintiff was terminated because of "[c]oncerns about conduct regarding transactions at and near the close in a customer's account following an internal investigation," and stated that "[t]here is no change recommended to the original reason for termination (i.e., discharge)."[4] Exhibit O, pp. 3-4. This finding recognizes that UBSFS's "concerns" in fact prompted plaintiff's termination. The Panel's addition of the phrase "following an internal investigation" recognizes that UBSFS had a good faith basis for those "concerns" prior to his termination. It is illogical to argue that the Panel found that UBSFS did not have such "concerns" at the time of plaintiff's termination when the Panel refused to expunge the explanatory sentence as requested by plaintiff. Thus, the recommended amendments are not relevant to the veracity of the explanatory sentence.

Finally, while plaintiff's argument on this issue is unclear at best, to the extent that plaintiff argues that the recommended amendments should have been part of the Form U-5 when

---

enforcement action against Mr. Van Pelt following the conclusion of its investigation. In addition, a Panel of arbitrators did not find evidence of misconduct by Mr. Van Pelt during the consideration of his claim against UBS for wrongful termination." Exhibit O, p. 4.

[4] As plaintiff notes in his brief, instead of trying to prove market manipulation during the hearing, UBSFS stipulated that it had not found plaintiff guilty of market manipulation because the issue was irrelevant to plaintiff's claims under North Carolina law.

5

it was filed, plaintiff's argument is illogical because the SEC's investigation was not complete and the underlying arbitration had not occurred when UBSFS filed the Form U-5. Article V, § 3(a) of the NASD Bylaws required UBSFS to file the Form U-5 within thirty (30) days of the termination of plaintiff's employment. Plaintiff was terminated on January 15, 2003. Per the NASD Bylaws, UBSFS filed the Form U-5 on February 13, 2003. As of March 26, 2003, almost two weeks after the Form U-5 was filed, the SEC's investigation was in its earliest stages. See Exhibit J. Further, the Award was not issued until November 4, 2005. Thus, the information that plaintiff apparently claims should have been included in plaintiff's Form U-5 was not available until almost three years after the Form U-5 was filed. Accordingly, any such argument is meritless.

**C.     The Truthfulness Of The Explanatory Sentence Requires Vacatur Of The Award.**

The Award provides only one basis of liability, which is defamation. The Award also specifically finds the explanatory sentence in the Form U-5 defamatory, but nevertheless recommends its inclusion in the amended Form U-5. As discussed in UBSFS's Brief, the Panel's finding and its remedy are illogical and ignore the falsity requirement under North Carolina defamation law. There is no reading of the Award that can resolve the obvious contradiction between the Panel's finding and remedy and its knowledge of their contradiction with North Carolina's well settled defamation law. Thus, the Award must be vacated.

**D.     Plaintiff Concedes That The Form U-5 Statement Was Privileged; The Finding Of Defamation Must Be Vacated.**

Public policy cannot support liability against UBSFS for truthfully complying with its regulatory obligations, regardless of whether the Form U-5 statement is afforded an absolute or qualified privilege under North Carolina law. Plaintiff admits that the Form U-5 should at least be afforded a qualified privilege under North Carolina law. Plaintiff's Brief, p. 23. As plaintiff

6

4829-2995-0465.03
Case 3:05-cv-00477-RJC-DCK     Document 42     Filed 11/01/06     Page 6 of 12

stated, to overcome a qualified privilege, plaintiff had to show that a false statement was made "with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity." Plaintiff's Brief, p. 23 (quoting Clark v. Brown, 393 S.E. 2d 134, 138 (N.C. Ct. App. 1990)). The Panel, however, found that the explanatory sentence was true and that UBSFS had a good faith basis for such finding. Thus, the defamation finding ignores the existence of even a qualified privilege under North Carolina law. Accordingly, the Award is irrational, does not rest on a colorable interpretation of the law, necessarily violates public policy, and should be vacated.[5]

### III. PLAINTIFF'S UNQUALIFIED RELEASE BARS ANY CLAIM BASED ON THE FORM U-5.

On February 13, 2003, UBSFS filed the Form U-5 containing the explanatory sentence that the Panel found to be defamatory. Plaintiff alleged that the explanatory sentence prevented him from finding employment with a broker dealer comparable to UBSFS.[6] On February 20, 2003, while transferring his registration to his new employer Moors & Cabot, Inc., plaintiff executed a Form U-4, agreeing to "release each employer, former employer and each other person from any and all liability, of whatever nature, by reason of furnishing any . . . information

---

[5] While plaintiff repeatedly cites the fact that that the Panel ordered UBSFS to amend the Form U-5 to indicate that plaintiff was under internal review for fraud or wrongful taking of property, or violating investment related statutes, regulations, rules, or industry standards of conduct, plaintiff does not argue and cannot argue that UBSFS somehow defamed him by indicating that he was not under internal review at the time of his termination. Further, the Panel did not find that UBSFS's response concerning the internal review was defamatory. Plaintiff even admits that the defamation finding was based on the explanatory sentence. Plaintiff's Brief, pp. 9-10. Thus, plaintiff's references to the response concerning the internal review are irrelevant to the Panel's defamation finding.

[6] While plaintiff alleged that he was immediately damaged by the filing of the Form U-5, damages in actions for libel per se such as this one are "presumed by proof of publication, with no further evidence required as to any resulting injury." Boyce & Isley, PLLC v. Cooper, 568 S.E. 2d 893, 898 (N.C. Ct. App. 2002); see Exhibit U, NASD Record 00040 ("Respondents refused to change the reason for termination given on Wells' Form U-5, which is defamatory, untrue, and has made it impossible for Wells to obtain another position with a comparable broker dealer."); Exhibit L ("Wells had to inform every prospective employer with whom he spoke of the reason for his termination."); Plaintiff's Brief, p. 3 (Plaintiff "was told by firm after firm that they could not even interview him in view of the Form U-5 filed by UBS."); Exhibit T, Tape 5, pp. 22-23, 25 (testimony from plaintiff that AG Edwards and Legg Mason refused to hire plaintiff because of the Form U-5 comments).

7

4829-2995-0465.03

reported on the Uniform Termination Notice for Securities Industry Registration (Form U-5)." This release is clear and unqualified. Such releases are enforceable under North Carolina law. See Financial Services of Raleigh, Inc. v. Barefoot, 594 S.E. 2d 37, 42 (N.C. Ct. App. 2004) (release bars known and unknown claims that existed at the time it was signed). The Panel's finding of liability directly contradicts the terms of this release. Accordingly, the Award must be vacated.

Plaintiff argues that his release of UBSFS following his termination did not bar his defamation claim. In support of his argument, plaintiff mistakenly relies upon an unpublished decision from the New York Supreme Court, Marais v. Barclays de Zoete Wedd Inc., Index No. 121088/02 (N.Y. Sup. Ct. 2003). Specifically, plaintiff stated that "the court held that to accept the defendant's argument concerning the effect of the release contained in the Form U-4, 'it would be impossible for any employee to prevail on a U5 defamation or tortious interference claim, which is not the case.'" Plaintiff's Brief, p. 26. Plaintiff's cite, however, neglects the reasoning behind the Court's statement. The Marais court stated as follows:

> In rejecting this defense, the Panel may well have found that the language on the Form U-4, which was signed at the outset of employment, clearly refers to a new hire releasing prior employers for information already reported on any existing Form U-5. By its terms, the Form U-4 refers to "information reported in the * * * Form U-5." Indeed, the Panel could have found that Barclays' waiver argument is illogical, given that every person who is the subject of a Form U-5 necessarily signed an earlier Form U-4. If Barclays' argument is to be believed, it would be impossible for any employee to prevail on a U-5 defamation or tortious interference claim, which is not the case.

Id. at *19 (Exhibit U, NASD Record 00149-50). Thus, Marais actually supports UBSFS's argument that a Form U-4 by its terms releases former employers from any liability based on statements previously provided in the Form U-5. The Marais distinction concerning the release of new employers from liability based on future Form U-5 statements does not apply to this

8

matter because plaintiff executed the release after the Form U-5 was filed. Thus, <u>Marais</u> actually supports UBSFS's argument that a release executed following the publication of the allegedly defamatory statement bars any liability.

While plaintiff also argues that a release in an employment application should only grant the employer a qualified privilege to comment on the employee, plaintiff again fails to recognize that plaintiff's release was executed after the filing of the Form U-5. The cases cited by plaintiff concern releases for future statements, not releases for past statements. Under North Carolina law, a release executed after the occurrence of the acts complained of bars any liability based on those acts. See <u>Financial Services of Raleigh, Inc. v. Barefoot</u>, 594 S.E. 2d 37, 42 (N.C. Ct. App. 2004) (release bars known and unknown claims that existed at the time it was signed). Finally, as previously discussed, the Panel's finding that the explanatory sentence was true satisfies even a qualified privilege under North Carolina law. Thus, plaintiff's arguments fail.

## IV. EMPLOYMENT AT WILL CLAUSES ARE ENFORCEABLE UNDER NORTH CAROLINA LAW.

Plaintiff does not dispute that any finding of wrongful termination against UBSFS would contradict the express terms of the parties' agreements. Instead, plaintiff argues that the Award should not be vacated to the extent it is based on wrongful termination because the Panel may have found that the employment at-will clauses in the parties' agreements were overreaching or oppressive. Initially, while making specific findings in the Award, the Panel did not find that the clauses were overreaching or oppressive. Thus, plaintiff is asking the Court to base its review on a finding not included in the reasoned Award, which is improper. See <u>Harry Hoffman Printing, Inc. v. Graphic Commc'n Int'l Union, Local 261</u>, 950 F.2d 95, 99 (2nd Cir. 1991) (reviewing court "cannot simply ignore the arbitral opinion" and uphold arbitrator's decision on some

9

4829-2995-0465.03
Case 3:05-cv-00477-RJC-DCK   Document 42   Filed 11/01/06   Page 9 of 12

ground not relied upon him). Further, plaintiff cites no North Carolina law to support his argument that employment at-will clauses are somehow unconscionable. To the contrary, all North Carolina employment relationships are deemed to be at-will unless otherwise provided for by contract. See Whitings v. Wolfson Casting Corp., 618 S.E. 2d 750, 752 (N.C. Ct. App. 2005) ("In North Carolina, the employer-employee relationship is governed by the at-will employment doctrine, which states that 'in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party.'") (citing Kurtzman v. Applied Analytical Industries, Inc., 493 S.E. 2d 420, 422 (N.C. 1997)); Dewitt v. Mecklenburg County, 73 F.Supp.2d 589, 599 (W.D. N.C. 1999) (same). Accordingly, a clause simply restating the well settled North Carolina law cannot be unconscionable under the same law.

Plaintiff also argues that the parties' arbitration agreement somehow nullifies the contractual at-will status of plaintiff's employment. As previously stated, however, such an argument directly contradicts North Carolina employment law. Further, the cases plaintiff cites from other jurisdictions stand for the proposition that where the parties' agreements do not provide the employee's status or exclude wrongful termination claims, an agreement to arbitrate wrongful termination claims may require "for cause" terminations. These cases, however, are not applicable to this dispute because the parties' agreements specifically provided that plaintiff's employment was at-will and could be terminated with or without cause. Additionally, there is nothing in the parties' agreements that contradict the at-will clauses. Thus, any finding that plaintiff's employment was not at-will necessarily failed to draw its essence from the parties' agreements and requires vacatur of the Award.

10

4829-2995-0465.03
Case 3:05-cv-00477-RJC-DCK    Document 42    Filed 11/01/06    Page 10 of 12

**WHEREFORE,** UBSFS respectfully requests that the Court vacate the Award and remand this matter for de novo review by a new arbitration panel. In the alternative, UBSFS respectfully requests that the Court vacate the Award and remand the matter to the arbitration Panel for clarification of its findings and discussion of the critical contract terminology in the parties' agreements.

s/ William O. L. Hutchinson
NC State Bar No. 32742
George C. Covington
NC State Bar No. 8215
Erika A. Olson
NC State Bar No. 34135
Attorneys for *Defendant*
KENNEDY COVINGTON LOBDELL &
HICKMAN, LLP
Hearst Tower, 47th Floor
214 N. Tryon Street
Charlotte, North Carolina 28202
Telephone: (704) 331-7400
Facsimile: (704) 353-3132
E-mail: whutchinson@kennedycovington.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

andywhiteman@hwlawyers.com

and I certify that I have mailed the document to the following non CM/ECF participants:

Sarah G. Anderson
Clawson & Staubes, LLC
126 Seven Farms Dr, Ste 200
Charleston, SC 29492-7595

Charles P. Murdter
1050 Connecticut Ave Ste 1000
Washington, DC 20036

                                              s/ William O. L. Hutchinson
KENNEDY COVINGTON LOBDELL &
HICKMAN, LLP
Hearst Tower, 47th Floor
214 N. Tryon Street
Charlotte, North Carolina 28202
Telephone: (704) 331-7400
Facsimile: (704) 353-3132
E-mail: whutchinson@kennedycovington.com