# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:05CV477

| | |
|---|---|
| W. WELLS VAN PELT, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND ORDER** |
| ) | |
| UBS FINANCIAL SERVICES, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

Presently before the Court is Plaintiff W. Wells Van Pelt's Motion for Confirmation of an arbitration award of $2.4 million in his favor, and Defendant UBS's cross-motion to vacate the same. The Court finds jurisdiction is present. 28 U.S.C. § 1331. For the reasons stated below, beginning with the following material and undisputed facts, the Court confirms the arbitration award and denies UBS's motion to vacate**.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Van Pelt was employed as a financial advisor by J.C. Bradford and its successor, UBS PaineWebber, Inc., from July 1999 to January 15, 2003. Defendant UBS is the successor to these entities. On July 23, 1999, Van Pelt executed and filed a Uniform Application for Securities Industry Registration or Transfer form ("Form U-4") to transfer his securities industry registration to J.C. Bradford. As part of his Form U-4, Van Pelt agreed "to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in

Item 10 as may be amended from time to time." The National Association of Securities Dealers ("NASD") was one of the organizations listed in Item 10. Van Pelt also agreed to "release each employer, former employer and each other person from any and all liability, of whatever nature, by reason of furnishing any of the above information, including that information reported on the Uniform Termination Notice for Securities Industry Registration (Form U-5)."

On January 15, 2003, following an internal investigation, Van Pelt's at-will employment with UBS was terminated. As required by Article V, § 3(a) of the NASD Bylaws, UBS filed a Uniform Termination Notice for Securities Industry Registration ("Form U-5") within thirty days. Section 3 of the Form U-5 requires the NASD member firm to provide an explanation for the termination of the financial advisor's registration. UBS filed the required Form U-5, stating in § 3 that Van Pelt's registration was terminated due to "Concerns about conduct regarding transactions at and near the close in a customer''s [sic] account." Section 7B of the Form U-5 asks the following: "Currently is, or at termination was, the individual under internal review for fraud or wrongful taking of property, or violating investment related statutes, regulations, rules, or industry standards of conduct?" UBS indicated "No" in Section 7B because the internal investigation was completed prior to Van Pelt's termination.

On January 28, 2004, Van Pelt initiated an arbitration proceeding with the NASD against UBS. He alleged claims of wrongful termination, defamation, intentional interference with prospective contractual relations, violation of the North Carolina Wage and Hour Act, violation of The Age Discrimination in Employment Act of 1967, tortious interference with contractual relationships, breach of the duty of good faith and fair dealing, conversion, civil conspiracy, and negligent infliction of emotional distress.

2

On April 20, 2004, UBS and its employee named in the proceeding filed an answer with counterclaims and a motion to dismiss. UBS denied Van Pelt's allegations and moved to dismiss the Statement of Claim on the following grounds: North Carolina law does not recognize a claim for wrongful termination for an at-will employee; the statement in the Form U-5 was true and, nevertheless, privileged as a matter of law; and Van Pelt specifically released any claim against his employer based on language provided in the required Form U-5. UBS asserted counterclaims for breach of a repayment obligation, breach of a non-solicitation agreement, tortious interference with contract, and violation of North Carolina's Unfair and Deceptive Practices Act.

The arbitration hearing was held in Charlotte, North Carolina, from October 3-7, 2005. At the end of Van Pelt's presentation of evidence, UBS moved to dismiss his claims. Van Pelt agreed to dismiss the claims against UBS's employee and to dismiss the claim alleging that UBS had violated The Age Discrimination in Employment Act of 1967. The panel denied UBS's motion as to Van Pelt's remaining claims.

On November 4, 2005, the NASD provided the parties a copy of the panel's award. The panel found UBS liable and determined it should pay compensatory damages in the amount of $2,471,330.00 and $16,579 for expert witnesses. The panel also found that the Form U-5 contained defamatory information and recommended the expungement of the explanatory sentence from the Form U-5.[1] The panel recommended replacement language that included some of the same words used by UBS in the Form U-5.[2] The panel also ordered UBS to file an amended Form U-5, changing

---

[1] The sentence reads: "Concerns about conduct regarding transactions at and near the close in a customer"s [sic] account."

[2] The replacement language reads: "Concerns about conduct regarding transactions at and near the close in a customer's account following an internal investigation. Although Mr. Van Pelt offered to resign rather than be terminated, his request was denied. The Securities and Exchange Commission ("SEC") conducted an investigation

3

its response in Section 7B to indicate that Van Pelt was under internal review at the time of his termination and to provide "complete details regarding the internal review" that led to Van Pelt's termination. All other requests for relief submitted by Van Pelt were denied.

On November 15, 2005, Van Pelt filed a Complaint with this Court seeking confirmation of the award. Van Pelt subsequently filed a motion for confirmation of arbitration award on December 6, 2005. UBS filed a motion to vacate the arbitration award and its answer on December 7, 2005.

## II. DISCUSSION

Both parties agree that this action is governed by the Federal Arbitration Act. See 9 U.S.C. §§ 1-16. The Act provides that a court may vacate an arbitration award only on the following grounds:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In addition, the Fourth Circuit has recognized a few common law grounds for vacating such an award which "include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law." Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 234 (4th Cir. 2006). To vacate an arbitration award, the moving party must sustain the heavy burden of showing one of the grounds specified in the Federal Arbitration Act

---

regarding the transactions. The SEC did not initiate any enforcement action against Mr. Van Pelt following the conclusion of its investigation. In addition, a Panel of arbitrators did not find evidence of misconduct by Mr. Van Pelt during the consideration of his claim against UBS for wrongful termination (NASD arbitration case #04-00619)."

or one of certain limited common law grounds. Id.

Judicial review of an arbitration award in federal court is "substantially circumscribed." Id. In fact, the scope of judicial review for an arbitrator's decision "is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all – the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." Apex Plumbing Supply, Inc. v. U.S. Supply Co., 142 F.3d 188, 193 (4th Cir. 1998). In reviewing such an award, "a district . . . court is limited to determine whether the arbitrators did the job they were told to do--not whether they did it well, or correctly, or reasonably, but simply whether they did it." Remmey v. PaineWebber, Inc., 32 F.3d 143, 146 (4th Cir. 1994) (internal quotation marks omitted).

UBS contends that the award should be vacated because (1) the award was not drawn from the essence of the contract; (2) the panel manifestly disregarded relevant law; (3) the panel exceeded its power in making the award; and (4) the award violates public policy.

### A. Panel's award failed to draw the essence from the contract

In order to show that the award failed to draw the essence from the contract, UBS must show that the panel "has disregarded or modified unambiguous contract provisions or based an award upon his own personal notions of right and wrong." Three S. Delaware, Inc. v. Dataquick Info. Sys., Inc., 492 F.3d 520, 528 (4th Cir. 2007). However, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO, 204 F.3d 523, 527 (4th Cir. 2000) (internal quotation marks omitted).

UBS argues that the award fails to draw its essence from the contract because the award on

its face provided only one finding of wrongdoing – defamation – and the language in Form U-4 that Van Pelt signed specifically released UBS from any liability for information provided on the Form U-5. UBS asserts that because the only ground specifically noted in the award was defamation in paragraph 3, the panel could not have based liability for the compensatory damages on any other ground. UBS also asserts that the Court must limits its review of the award to the finding of defamation as the basis of the compensatory award because that was the only specific finding in the award.[3] UBS's arguments are unpersuasive.

The Court does not find that liability in paragraph one of the award was based on a finding of defamation. While it is true that the panel concluded that the information provided on the Form U-5 was defamatory, the panel did not specifically designate why UBS was liable for compensatory damages. The panel would have been justified in awarding compensatory damages based upon a number of Van Pelt's claims, including tortious interference with contractual relations, conversion, or breach of duty of good faith and fair dealing.

The panel was silent concerning the basis for its monetary award, which is not a basis for vacating the award. Arbitrators need not state reasons for reaching a particular result. See United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 598 (1960); see also Atlanta-Tomberlin, Inc. v. Eastern Band of Cherokee Indians, 672 F. Supp. 887, 889 (W.D.N.C. 1987) ("The

---

[3] UBS cites to Hardy v. Walsh Manning Sec., L.L.C., 341 F.3d 126 (2d Cir. 2003), to support its position that the court must limit its review to the panel's finding of defamation. In Hardy, the panel did make a specific finding that the defendants were liable based on the principles of respondeat superior. 341 F.3d at 128 ("Respondents Walsh Manning and Skelly be and hereby are jointly and severally liable for and shall pay to Claimant compensatory damages in the amount of $2,217,241.00 based on the principles of respondeat superior."). The Hardy court concluded that the arbitration panel ignored well-defined and explicit New York law regarding the principles of respondeat superior by finding Skelly liable and vacated and remanded that portion of the award. Id. at 134. It is clear from the face of the award in the Hardy case, that the panel made a clear finding as to the reason for liability. The Court finds that the same cannot be said of the panel in this case.

6

courts generally have held that arbitrators are not required to give their reasons for an award or that the proceedings and record be as complete as a court trial. Arbitrators are not required to disclose the basis upon which the awards are made and courts will not look behind a lump-sum award in an attempt to analyze their reasoning process." (citing Kurt Orban Co. v. Angeles Metal Sys., 573 F.2d 739, 740 (2d Cir. 1978))). The Court concludes that liability could have been based on any of the remaining claims, and there is nothing on the face of the award that would indicate that the award failed to draw its essence from the contract.

UBS additionally argues that the award fails to draw its essence from the contract because the award failed to address critical contract terminology. UBS asserts that the panel ignored the release language when it found liability based on defamation. As the Court has stated, the panel did not specifically designate the basis for the compensatory award. Therefore, there is nothing on the face of the award that can show that the panel failed to address critical contract terminology.

UBS was afforded a full and fair opportunity to present to the panel its argument that the statement that it placed on the Form U-5 was not actionable because it was true and subject to an absolute privilege. "The statutory grounds for vacatur permit challenges on sufficiently improper conduct in the course of the proceedings; they do not permit rejection of an arbitral award based on disagreement with the particular result the arbitrators reached. Accordingly, parties may not seek a 'second bite at the apple' simply because they desire a different outcome. 'To permit such attempts would transform a binding process into a purely advisory one.'" Remmey, 32 F.3d at 146 (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. Transp. Commc'ns Int'l Union, 973 F.2d 276, 282 (4th Cir. 1992)). The panel considered UBS's arguments and implicitly rejected them. The Court finds that the arbitrators did the job they were told to do, and UBS has failed to show that the

arbitrators failed to consider the essence of the contract. Thus, the award cannot be vacated on this ground.

**B.      Panel exceeded its powers by ignoring the release in the U-4 form**

A court may vacate an arbitrator's award when the arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). UBS argues that the Form U-4 release language necessarily prohibits the panel from finding liability on the basis of any information in the Form U-5 furnished by UBS and that the panel exceeded its power by finding liability based on defamation.

As the Court has already concluded, the panel did not give any reasons for why it found UBS liable for compensatory damages. The panel made the determination of liability separately from the finding of defamatory information in the Form U-5. It is not apparent from the face of the award that the arbitrators considered the language of the Form U-4 release and ignored the terms of the parties' agreement in finding UBS liable.[4] UBS, therefore, has failed to meet its burden of showing that the panel ignored the release language, and the award cannot be vacated on this basis.

**C.      The award manifestly disregards the requirement of falsity for a defamation claim under North Carolina law**

"In making a claim based on 'manifest disregard,' an appellant once again shoulders a heavy burden. . . . [A]n arbitration panel's interpretation of the law will not be reversed unless the arbitrators understand and correctly state the law, but proceed to disregard the same. Accordingly, a court's belief that an arbitrator misapplied the law will not justify vacation of an arbitral award.

---

[4] The Court notes that other NASD awards have a similar format: a finding of liability and then a finding of defamatory information in the CRD, which is then recommended to be expunged and replaced with different language.

Rather, appellant is required to show that the arbitrators were aware of the law, understood it correctly, found it applicable to the case before them, and yet chose to ignore it in propounding their decision." Remmey, 32 F.3d at 149 (internal quotation marks and citations omitted).

UBS argues that the panel manifestly ignored the law of defamation when it concluded that the Form U-5 language was defamatory and then used essentially the same exact statement in its replacement language. The panel stated that the Form U-5 "contain[ed] defamatory information" and recommended adding language which showed the full context of Van Pelt's termination. The panel also ordered that a new Form U-5 be filed and that Question 7B (Internal Review) be changed to yes and provide complete details regarding the internal review. The replacement language did not merely add "following an internal investigation." The panel also included information regarding Van Pelt's offer of resignation as well as the finding of no misconduct by the SEC and a panel of arbitrators. The replacement language put into context the reason why Van Pelt was terminated.

A party making a claim based on manifest disregard shoulders a heavy burden. A panel's interpretation of the law will not be reversed unless there is a clear showing that the panel understood the law and chose to ignore it. A court's belief that the law has been misapplied "does not justify vacation of the arbitral award." Remmey, 32 F.3d at 149. The Court finds nothing on the face of the award which would show that the panel was aware of the law, understood it correctly, and found it applicable to the case, and yet chose to ignore it in the decision. At best, the award of compensatory damages and finding of defamation is ambiguous. Since the panel was silent as to its reasoning for the compensatory damages, UBS cannot meet its burden of showing that the panel manifestly disregarded the law, and the award cannot be vacated on this ground.

**D.     UBS alleges that the panel's award violates well-defined and dominant public policy**

A court can vacate an arbitration award if it "violates well-settled and prevailing public policy." Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996). UBS contends that imposing liability on UBS for truthfully fulfilling its regulatory obligations of filling out the Form U-5 violates public policy. The Court, however, finds that UBS has failed to show that the arbitrators found their statement to be truthful on the Form U-5 and that truthfully filling out the Form U-5 is well-defined and prevailing public policy. Since the panel found defamatory information in the Form U-5, UBS's argument is belied by the face of the award. Therefore, UBS has not met its burden of showing the award violated public policy, and the Court will not vacate the award.

### III. CONFIRMATION OF THE ARBITRATION AWARD

Pursuant to 9 U.S.C. § 9, this Court has the power to enter judgment on an award made as a result of arbitration. Section 9 provides that, if the parties have agreed that a judgment of the court shall be entered upon the award pursuant to the arbitration, a party may "apply to the court so specified for an order confirming the award" within one year, and "the court must grant such an order unless the award is vacated, modified, or corrected . . . ." 9 U.S.C. § 9. Having concluded that the award should not be vacated, Van Pelt's motion to confirm the arbitration award meets all the necessary requirements of 9 U.S.C. § 9. Accordingly, Van Pelt's motion will be granted and this Court will enter judgment consistent with the arbitrator's award for this matter.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant UBS's Cross-Motion to Vacate (Doc. No. 11) and **GRANTS** Van Pelt's Motion for Confirmation of Arbitration Award (Doc. No 8).

**SO ORDERED.**

Signed: October 12, 2007

Robert J. Conrad, Jr.
Chief United States District Judge